UNITED STATES of America, Plaintiff,

v.

Audley G. FONG, Defendant.

Civ. A. No. 87–45 MMS.

United States District Court,
D. Delaware.

June 9, 1987.

---

William C. Carpenter, Jr., U.S. Atty., and Edmond Falgowski, Esq., Asst. U.S. Atty., Dept. of Justice, Wilmington, Del., for plaintiff.

Banjamin F.L. Darden, Law Offices of Jack P. Druckman, North Miami Beach, Fla., for defendant.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

Defendant Audley G. Fong has been charged, by grand jury indictment, with one count of possession with intent to distribute greater than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a). Defendant has pleaded not guilty to this charge, and has filed a motion to suppress evidence. This Court held an evidentiary hearing on May 19, 1987, and ordered supplemental briefing on the suppression motion. For the reasons that follow, defendant's motion will be denied.

## I. FACTS

On March 23, 1987, at about 3:25 p.m., defendant was driving a 1982 Chevrolet Monte Carlo in the northbound lanes of Interstate 95 in Delaware, having just left the toll plaza. Corporal Robert Durnan of the Delaware State Police was parked on the median strip about 100 yards north of the toll plaza, in an unmarked police cruiser. As defendant's car passed, Corporal Durnan noticed that the car's side and rear windows were tinted. Although the sun was shining, Durnan testified he could see only the outline of the car's occupants.[1] Believing that the windows were too dark for safe operation of the vehicle, Durnan decided to make a stop "in order to see if the windows were factory-installed or were, in fact, too dark." Transcript, Docket Item 13, at 3.

Corporal Durnan turned on the police cruiser's high beams and flashers and followed defendant's car for at least several hundred yards before it pulled over. While following the car, Durnan noticed that it bore a Florida license plate.[2] After the two vehicles came to a stop, Durnan approached defendant's car on foot and asked defendant for his driver's license and registration, which defendant produced. With the driver's side window rolled down, Durnan smelled air freshener and saw a container of air freshener on the rear window deck. This, combined with what Durnan testified was defendant's apparent nervousness, aroused Durnan's suspicion that defendant's car carried illegal drugs. Durnan told defendant that he had been stopped because his windows were too dark, and that defendant would receive for the violation either a traffic citation or a warning. Durnan then conducted defendant to the police cruiser and told him to sit in the passenger seat. Defendant complied, and shut the cruiser's passenger side door behind him.

Inside the cruiser, Corporal Durnan again explained why defendant had been stopped and asked him "if he had any weapons or fireworks or untaxed cigarettes in the vehicle." Transcript, at 13. Defendant replied that he did not, and Durnan asked if he could search defendant's car. Defendant indicated that Durnan could search if he wished, and Durnan then produced a standard Delaware State Police consent search form. Durnan filled in the

---

1. At the evidentiary hearing, defendant testified that he believed the driver's side window was open as he left the toll plaza. The Court nevertheless credits Durnan's testimony that the car's windows were closed when it came into Durnan's view.

2. Corporal Durnan's testimony that he did not notice the Florida license plate until after his decision to stop defendant for a traffic violation is uncontradicted and must be credited by this Court.

form and explained that defendant's signature would permit Durnan to search. Defendant signed the form.

After moving defendant's passenger to the cruiser, Durnan searched defendant's car. At this point, Durnan was able to look through the car's windows from the inside and concluded that they indeed were too dark and hence unsafe. Durnan also noticed that the interior panels above the rear arm rests were a different color from the rest of the passenger compartment. He pulled off the panels and discovered four kilograms of cocaine in the spaces behind them. Corporal Durnan then placed defendant under arrest.

Durnan testified that he knew of no Delaware statute that specifically regulates or prohibits tinting of automobile windows. When stopping defendant's car, Durnan instead relied upon 21 *Del.C.* § 2115(6), which prohibits the operation of any vehicle "which is in such unsafe condition as to endanger any person or which is equipped in any manner in violation of this title." Although another provision, 21 *Del.C.* § 4313, specifically regulates tinting,[3] Durnan acknowledged that he was unfamiliar with that statute. Nor did Durnan rely upon 21 *Del.C.* § 4309, which specifically prohibits the operation of a vehicle with obstructions on the windows.[4] Rather than decide that the windows of defendant's car were too dark with reference to the standards embodied in sections 4313 or 4309, Durnan testified only that "I thought that these windows were dark enough that it may have distorted his vision and given him a bad vision of other traffic." Transcript, at 40. It was Durnan's opinion that the windows were too dark and hence "un-

safe" within the more general meaning of section 2115(6).

## II. DISCUSSION

### A. Reasonable Suspicion for the Stop

To be valid under the Fourth Amendment, an automobile stop must be based on an articulable and reasonable suspicion that the vehicle or an occupant is subject to seizure for violation of the law. *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979); *see United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981); *United States v. Brignoni-Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607 (1975); *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968); *United States v. Hawkins*, 811 F.2d 210, 213 (3d Cir.1987). In enunciating this standard, the Supreme Court stated:

> To insist neither upon an appropriate factual basis for suspicion directed at a particular automobile nor upon some other substantial and objective standard or rule to govern the exercise of discretion "would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches...."

*Prouse*, 440 U.S. at 661, 99 S.Ct. at 1400 (quoting *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880). Police officers "may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion." *Brignoni-Ponce*, 422 U.S. at 884, 95 S.Ct. at 2582.

 An objectively reasonable stop is not invalid solely because the officer acted

---

**3.** The Delaware tinting statute provides:

No person shall operate any motor vehicle on any public highway, road or street with the front windshield, the side windows to the immediate right and left of the driver and/or side wings forward of and to the left and right of the driver that do not meet the requirements of Federal Motor Vehicle Safety Standard 205 in effect at the time of its manufacture.

21 *Del.C.* § 4313(a). Federal Motor Vehicle Safety Standard 205 specifies requirements for window glazing materials, in part "to ensure a necessary degree of transparency in motor ve-

hicle windows for driver visibility." 49 C.F.R. § 571.205(S2) (1986).

**4.** The Delaware window obstruction statute provides:

No person shall drive any vehicle upon a highway with any sign, poster or other non-transparent material upon the front windshield, side wings or side or rear window of such motor vehicle, other than a certificate or other paper required to be so displayed by law.

21 *Del.C.* § 4309.

out of improper motivation, such as a hunch that the vehicle carried illegal drugs. *See Hawkins,* 811 F.2d at 214; *United States v. Cardona,* —— F.Supp. ——, Crim. A. No. 86–72, slip op. (D.Del. Dec. 1, 1986). The Supreme Court has held that "[w]hether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon,* 472 U.S. 463, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370 (1985) (quoting *Scott v. United States,* 436 U.S. 128, 136, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978)). Nevertheless, an investigative stop may be invalid if a reasonable officer would not have made the stop in the absence of an illegitimate motive. *United States v. Smith,* 799 F.2d 704, 708 (11th Cir.1986).

■ I believe that a reasonable officer, under the circumstances presented in this case, would not have stopped defendant's car.[5] Corporal Durnan testified that he stopped defendant's car because in his opinion the windows were too dark and hence unsafe under 21 *Del.C.* § 2115(6). Durnan's judgment, however, was flawed in two respects.

First, without reference to some "objective standard or rule," *Prouse,* 440 U.S. at 661, 99 S.Ct. at 1400, Durnan's opinion of how dark was too dark was entirely subjective. Durnan acknowledged that he was wholly unacquainted with the objective window tinting criteria embodied in 21 *Del.C.* § 4313, and that he did not rely upon the rule against window obstructions set out in 21 *Del.C.* § 4309. In the absence of such criteria, Corporal Durnan's discretion in his choice of vehicles to stop was subject neither to restraint nor even to guidance.

Second, assuming Durnan's opinion that the windows were too dark was more than an inarticulate guess, it clearly was unreasonable to infer, from an inability to see into the car from the outside, an inability to see out of the car from the inside.[6] Common experience shows that it would be just as unreasonable to infer that a wearer of sunglasses is unable to see if his eyes are not visible to one standing in front of him. Because police officers may stop vehicles only on the basis of objective facts and "rational inferences from those facts," *Brignoni-Ponce,* 422 U.S. at 884, 95 S.Ct. at 2582, Corporal Durnan acted unreasonably in stopping defendant's car. I therefore find that the stop was invalid.

**B. Consent to Search**

Consent to search is a well-recognized exception to the Fourth Amendment's warrant requirement. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). The burden is on the prosecution to prove that the consent was freely and voluntarily given. *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972); *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). The voluntariness of consent is a question of fact to be determined from the totality of all the circumstances. *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2047; *see United States ex rel. Harris v. Hendricks,* 423 F.2d 1096, 1099 (3d Cir.1970). Although knowledge of the right to refuse consent is one factor to be taken into account, it is not the *sine qua non* of an effective consent. *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2047.

■ If freely and voluntarily given, a consent to search is not invalidated by a prior illegal stop. In *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9

---

**5.** I do not find that Corporal Durnan had an improper ulterior motive, such as a hunch defendant's car contained contraband. As is explained in the text, "[t]he stop was unreasonable not because the officer secretly hoped to find evidence of a greater offense, but because it was clear that an officer would have been uninterested in pursuing the lesser offense absent that hope." *Smith,* 799 F.2d at 710. I only find that Durnan acted unreasonably in making the stop.

**6.** Regulations directed at window tinting and obstructions are, of course, designed to maintain driver vision, not officer vision. *See* notes 3–4, *supra.*

L.Ed.2d 441 (1963), the Supreme Court stated:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

*Id.* at 487–88, 83 S.Ct. at 417 (citation omitted). Courts have uniformly held that voluntary consent, as defined for Fourth Amendment purposes, is an intervening act free of police exploitation of the primary illegality and is sufficiently distinguishable from that illegality to purge the evidence of the primary taint. *See United States v. Carson,* 793 F.2d 1141, 1147–48 (10th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 315, 93 L.Ed.2d 289 (1986); *United States v. Recalde,* 761 F.2d 1448, 1457 (10th Cir. 1985); *United States v. Troutman,* 590 F.2d 604, 606 (5th Cir.1979); *United States v. Ballard,* 573 F.2d 913, 916 (5th Cir.1978); *see also Brown v. Illinois,* 422 U.S. 590, 605, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975) (requiring a confession to be "sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and the confession"). Some courts, however, require the prosecution to carry a heavier burden when establishing voluntary consent after an illegal stop than after a permissible stop. *See Troutman,* 590 F.2d at 606; *Ballard,* 573 F.2d at 916.

■ I find that the totality of the circumstances, especially defendant's undisputed understanding of the situation and his signing of the consent form, clearly indicate that defendant's consent was voluntary.[7] Defendant asserts that his consent was not voluntary because he was under "arrest" when he permitted Corporal Durnan to search the car. *See Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (finding that detention had ripened into arrest and that consent to search was therefore invalid). Defendant's freedom of action undoubtedly was curtailed. A traffic stop, however, does not rise to the level of the custody associated with formal arrest either as an intrusion on personal liberty or in terms of its impact on consent. *See United States v. Cardona,* Crim. A. No. 86–72, slip op. at 10 (D.Del. Dec. 1, 1986); *cf. Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (questioning during routine traffic stop does not amount to custodial interrogation for Fifth Amendment purposes). Defendant also objects that he did not consent to a search as broad as that undertaken by Durnan. There is no evidence in the record, however, that defendant attempted to limit the scope of his consent. Moreover, courts have acknowledged that a consent search, to be effective, must be thorough. *See United States v. Kapperman,* 764 F.2d 786 (11th Cir.1985); *United States v. Torres,* 663 F.2d 1019 (10th Cir.1981), *cert. denied,* 456 U.S. 973, 102 S.Ct. 2237, 72 L.Ed.2d 847 (1982); *cf. United States v. Milhollan,* 599 F.2d 518, 527 (3d Cir.) ("Permission to search an automobile is hollow indeed if it does not include permission to search its contents and component parts."), *cert. denied,* 444 U.S. 909, 100 S.Ct. 221, 62 L.Ed.2d 144 (1979).

I therefore hold that defendant's consent to search was freely and voluntarily given, and the evidence seized was for that reason not the fruit of the prior illegal stop of defendant's car.

## III. CONCLUSION

By permitting in this case the use of evidence gained after an illegal stop and a valid consent to search, the Court does not mean to suggest that police officers may routinely sanitize evidence seized during traffic stops, including stops made utterly

---

7. The Court's finding of valid consent inheres regardless of whether the government must prove consent by a preponderance of the evidence, *Lego,* 404 U.S. at 489, 92 S.Ct. at 626, or by a somewhat greater amount of evidence.

without a reasonable basis, by the simple expedient of obtaining the driver's consent to search. If future cases indicate that illegal stops have become prevalent in drug prosecutions, the Court will be compelled to reassess its position.

For the foregoing reasons, defendant's motion to suppress will be denied.