UNITED STATES of America, Plaintiff,

v.

Lorgio Danilo MORALES, Jr., and Luis Lazaro Viera, Defendants.

Crim. A. No. 87–85 MMS.

United States District Court,
D. Delaware.

Dec. 8, 1987.

---

Kent A. Jordan, Asst. U.S. Atty., Dept. of Justice, Wilmington, Del., for plaintiff.

Joseph A. Hurley, of Joseph A. Hurley, P.A., Wilmington, Del., for defendant Morales.

Joel Defabio, of Malman, Defabio & Lapidus, Coral Gables, Fla., for defendant Viera.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

Defendants Lorgio Danilo Morales, Jr. and Luis Lazaro Viera have been charged with violating 21 U.S.C. §§ 841(a)(1) and 846, conspiracy and possession with intent to distribute cocaine. On November 5, 1987, the Court held a hearing on the motions to suppress filed by both defendants, who were present along with their respective counsel.

Corporal Durnan of the Delaware State Police stopped defendants' vehicle on Interstate 95 for speeding, and obtained the signature of the driver Morales on a con-

sent-to-search form. In his search of the automobile, Corporal Durnan found two packages of cocaine and arrested both defendants.

Durnan testified concerning his stop of vehicle, the consent, and the results of the search. Defendant Morales also testified as to those events. During the testimony of Corporal Durnan, the Court learned that an agent of the Federal Drug Enforcement Agency ("DEA"), Bill Glanz, and his secretary, Judith Maraz, were in Corporal Durnan's car when he stopped the defendants and searched their automobile. The DEA agent was out of town at the time of the hearing. After both litigants declined to call Ms. Maraz, the Court requested that Ms. Maraz be called as the Court's witness to testify without notification or preparation by either side. Ms. Maraz was sequestered until she took the stand.

## I. Stop of Vehicle

### A. Findings of Fact

Corporal Durnan testified that during a routine patrol of Interstate 95 on September 10, 1987 he had been driving southbound, had just crossed over to the northbound lanes in front of the toll plaza, and had proceeded approximately three-quarters of a mile northbound when he noticed a vehicle that appeared to be speeding. After clocking the car, he discovered that it was going 62 m.p.h. in a 55 m.p.h. zone. He pulled defendants over about one mile north of the toll plaza, near Route 896.

Defendant Morales testified that he was approximately 50 feet before the toll plaza when he observed Corporal Durnan's car stopped in the crossover on the other side. He could tell it was an unmarked police car, and observed a man with a uniform driving, another man in the passenger seat and a woman in the rear seat of the police car. He stated that everyone in the car looked at him as he passed, and that the police car put on its blinking lights as soon as it pulled out. Mr. Morales further testified that he was traveling between 35 m.p.

h. and 50 m.p.h. and at no time exceeded the 55 m.p.h. speed limit.

Judith Maraz, the DEA secretary in the car with Corporal Durnan, was not aware that she would be called as a witness. Throughout her testimony, she appeared to be nervous and to be attempting to testify accurately. Ms. Maraz stated that she had been employed for twelve years as an office assistant by the DEA. She knew Corporal Durnan through her work, and on September 10, 1987 she accompanied DEA Agent Bill Glanz when he returned Corporal Durnan's ammunition clip. She testified that she and Agent Glanz met Corporal Durnan at the administration building south of the toll plaza, and then accompanied him on his patrol. Ms. Maraz further stated that she was unaware of defendants' vehicle until Corporal Durnan said "he's speeding." Although she was unable to see the speedometer or estimate their speed, Ms. Maraz testified that Corporal Durnan accelerated rapidly and had to go quite fast to catch up to the defendants.

### B. Analysis

Defendants contend that Corporal Durnan's stop of their vehicle was invalid.

Automobile stops are allowed under the Fourth Amendment, if based on a reasonable, articulable suspicion that the driver of the vehicle or the vehicle is in violation of the law. *Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979); *United States v. Fong,* 662 F.Supp. 1319, 1321 (D.Del.1987). Objective factors must support this suspicion. *United States v. Hawkins,* 811 F.2d 210, 213–15 (3d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987); *United States v. Padron,* 657 F.Supp. 840, 845 (D.Del.1987). Testimony in the suppression hearing by both Corporal Durnan and his passenger indicate that Corporal Durnan had an objectively reasonable suspicion that defendants' vehicle was speeding. This suspicion and the clocking of the vehicle formed the basis for the stop. The Court concludes that the stop was valid.[1]

---

1. In order to discredit Corporal Durnan's testimony, defendants sought to prove bias by introducing at the suppression hearing the testimony of other persons stopped by him, a summary of

The motion to suppress based on the illegality of the stop filed by defendant Morales will be denied.

## II. Consent to Search

### A. Findings of Fact

Corporal Durnan testified that, in response to his lights, Mr. Morales pulled over to the side of the road on a large shoulder between I-95 and an exit ramp. Corporal Durnan stated that he went to the driver's side and asked Mr. Morales, who was driving, for his license and registration. Mr. Morales produced his Florida driver's license and a rental agreement with Luis Viera named as lessee. Corporal Durnan also noticed from the lease agreement that the car was due to be returned on August 29, 1987, several days previous. After Mr. Morales stepped out of the car at the Corporal's request, Corporal Durnan told him that he was stopped for speeding and observed that Mr. Morales stuttered, trembled and refused to look up. Corporal Durnan then noted there was a 4000-4500 mile difference between the mileage on the rental agreement and the mileage on the car's odometer. He stated there were alterations to the rental agreement as well as papers stapled or attached, and it did not appear to be a standard rental agreement. Corporal Durnan testified that in response to his question, Mr. Morales stated that he was travelling from Miami, Florida to North Bergen, New Jersey to visit relatives. Corporal Durnan separately questioned Mr. Viera, the car passenger, who told him he was going to Bergenfield, New Jersey to visit Mr. Morales' relatives.

Corporal Durnan stated that he requested that Mr. Morales be seated in his patrol car, and, once in the car, asked him if he had any guns, untaxed cigarettes or fireworks. Corporal Durnan explained that he did not inquire about drugs because that would make it less likely that someone would consent to a search. Corporal Dur-

nan testified that Mr. Morales responded "No, you can look if you want." Corporal Durnan then produced the standard consent form authorizing a search of the car attached to a binder, and asked Mr. Morales to sign it, which he did. The DEA secretary, Ms. Maraz, was seated in the car while Mr. Morales was there. Corporal Durnan testified that he did not advise Mr. Morales that he was not required either to sit in the police car or to sign the consent form. However, the consent form itself does advise the signer that he has the right to refuse to give his consent to search.

He then went over and asked Mr. Viera to get out. He searched the car, pulled the rear seat forward and found two packages of a white substance, that later proved to be cocaine, in a hollowed-out compartment in the back of the rear seat. He then arrested both Mr. Morales and Mr. Viera for possession and read them their *Miranda* warnings. It was not until after he found the cocaine that Corporal Durnan learned that Luis Viera, whose name appeared on the rental agreement, was the car passenger. Corporal Durnan issued Mr. Morales a citation for speeding, after the arrest for cocaine possession.

In his testimony, Mr. Morales stated that after his initial conversation with Corporal Durnan, he was told he would be getting a warning for speeding. While seated in the police car, Mr. Morales testified that, without mentioning a consent form, Corporal Durnan handed him a clipboard with everything covered except the signature line, and told him to "sign at the X." He stated that Corporal Durnan told him it was a search warrant after he had signed the form. Mr. Morales said that he had been arrested for speeding in Florida and asked to sign the warning he received there, so that he was not surprised to be asked to sign a warning. Mr. Morales also testified that although he could not be sure when Officer Durnan discussed the consent to search, he was sure he did not know that

information on those stops and trial transcripts. The Court refused to permit the introduction of this evidence. Recognizing that bias may be used to impeach and may be established by extrinsic evidence, and that the evidence was

arguably relevant, the Court ruled that under Federal Rule of Evidence 403 the probative value was substantially outweighed by the danger of confusion of issues and unfair prejudice as well as a waste of time.

the form he signed was a consent to search.

On redirect Corporal Durnan stated that when he handed Mr. Morales the consent form nothing was covering it and Mr. Morales appeared to read the form before signing it. He further testified that, both before and after the form was signed, he told Mr. Morales it authorized a search of the car.

Ms. Maraz's testimony on what occurred in Corporal Durnan's car reflects her uncertainty. She stated that she was nervous and uncomfortable about being in the back seat of the car while Mr. Morales and Corporal Durnan were talking in the front seat. She remembers that Corporal Durnan told Mr. Morales that the form was a consent form, but she was unable to state if this information was given before, or after, Mr. Morales had signed the form. She stated that, although her vision was partially blocked by the solid front seat of the car and she wasn't paying particular attention, she believes there were no other papers on the clipboard when Corporal Durnan handed it to Mr. Morales. Upon consideration of all the testimony and the demeanor of the witnesses, the Court finds that Corporal Durnan obtained the consent to search without fraud or coercion.

### B. Standing of Defendant Morales to Contest Search

Defendant Morales also contends that any consent to search given was invalid because Officer Durnan requested permission to search for weapons, fireworks or untaxed cigarettes, but not drugs, believing that consent would be refused if he made known his interest in drugs.

Because the Court finds that defendant Morales lacks the standing necessary to contest the validity of the search, it will not address whether Officer Durnan's search exceeded the scope of the oral consent given by Mr. Morales.

The United States Supreme Court has held that "only defendants whose Fourth Amendment rights have been violated [may] benefit from the [suppression] rule's protections." *Rakas v. Illinois,* 439 U.S. 128, 130, 134, 99 S.Ct. 421, 423, 425–26, 58 L.Ed.2d 387 (1978). The Court must determine whether the defendant has a "legitimate expectation of privacy in the invaded place." *Id.* at 143, 99 S.Ct. at 430 (citing *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). If the area searched was not within the defendant's privacy zone, a defendant's constitutional rights were not violated and he may not contest the search. *Rakas,* 439 U.S. at 133–34, 99 S.Ct. at 424–26. The proponent of the motion to suppress has the burden of establishing that his Fourth Amendment rights were violated. *Id.* at 130 n. 1, 99 S.Ct. at 423 n. 1.

In *Rakas,* the defendants were passengers in a vehicle owned and driven by another, and they sought to exclude from evidence firearms located in the locked glove compartment and underneath the front passenger seat. *Rakas,* 439 U.S. at 130, 99 S.Ct. at 423. The Court found that defendants had not provided any facts to demonstrate any privacy interest in these areas, "in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy." *Id.* at 148–49, 99 S.Ct. at 433.

Similarly, in *Government of the Virgin Islands v. Williams,* 739 F.2d 936, 938–39 (3d Cir.1984), the United States Court of Appeals for the Third Circuit found that passengers in a car had no expectation of privacy in the areas inside the ripped ceiling of the car, under the seat or inside the torn seat. Although Mr. Morales was driving when Corporal Durnan stopped the car, Mr. Viera's name was on the rental agreement as the lessee, and Mr. Morales' name did not appear. As the party with the burden, Mr. Morales has failed to demonstrate that he has a legitimate privacy expectation in the compartment inside the rear seat.

The fact that Mr. Morales was driving at the time of the stop, and that Mr. Viera was the renter and not the owner of the vehicle does not mandate a different result.

In *United States v. Padron,* 657 F.Supp. 840, 843–44 (D.Del.1987), this

Court found that the non-owner driver lacked the standing to contest the search of luggage belonging to the owner who was present in the car at the time of the arrest. When the lessee or owner remains in the car, the driver *qua* driver has no legitimate expectation of privacy in an area inside the rear seat. In addition, Mr. Morales does not assert any possessory interest in the cocaine and alleges that he had been driving with Mr. Viera for only one day. Based on the evidence submitted at the suppression hearing, the government has not established any connection between Mr. Morales and Mr. Viera, other than companions on a trip. The mere fact that Morales, and not Viera, was driving at the time of the stop does not confer an expectation of privacy upon Morales.

Other courts have reviewed the standing necessary to contest a search of a rental car. The Eleventh Circuit appellate court has held that passengers in an auto rented by another lack standing to contest the search of that vehicle. *United States v. McCulley*, 673 F.2d 346, 349, 352 (11th Cir.), *cert. denied*, 459 U.S. 852, 103 S.Ct. 116, 74 L.Ed.2d 102 (1982). Reviewing the validity of a search contested by the person whose credit card was used by another to rent a car, the Fifth Circuit Court of Appeals determined that the credit card holder did not have the necessary privacy interest or standing. *United States v. McConnell*, 500 F.2d 347, 348 (5th Cir.1974), *cert. denied*, 420 U.S. 946, 95 S.Ct. 1327, 43 L.Ed.2d 424 (1975). Finding no reasonable expectation of privacy by the driver whose name was not on the rental agreement which bore the name of an unrelated third party, the Tenth Circuit Court of Appeals found no basis upon which the driver could contest the search. *United States v. Obregon*, 748 F.2d 1371, 1374–75 (10th Cir.1984). The Fifth Circuit, however, upheld the validity of a consent to search signed by the actual renter of the car. *See United States v. $64,000.00 in United States Currency*, 722 F.2d 239, 245 (5th Cir.1984).[2]

Taken together, these cases stand for the proposition that the occupier of a vehicle rented by another lacks the necessary privacy interest to contest a search, but that the renter of the vehicle may contest a search.

The Court holds that because Mr. Morales was the driver of a car rented by another who was present at the time of the search, and because Mr. Morales has not provided additional evidence on a expectation of privacy concerning the cocaine inside the rear seat, Mr. Morales has no standing to contest the search. His motion to suppress will be denied.

### C. Validity of Third–Party Consent

▮ Defendant Viera asserts that the ineffectiveness of the third-party consent given by Morales mandates the suppression of the evidence as to Viera. When Corporal Durnan stopped the defendant's vehicle, Lorgio Morales was driving. Mr. Morales gave Corporal Durnan a driver's license with his name and a rental agreement naming Luis Viera as the renter of the vehicle. Mr. Morales was not named on the rental agreement. Mr. Morales gave his written and oral agreement to search. Corporal Durnan obtained no consent from Mr. Viera and did not ask his name until after the cocaine was found. The issue is whether Mr. Morales' consent to search the entire car, rented by Mr. Viera, is valid as to Mr. Viera with respect to the area inside the rear seat.

▮ Although the Supreme Court has held that a person may consent to a warrantless search, *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973), the burden of proof is on the government to demonstrate the validity of the consent by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 626–27, 30 L.Ed. 2d 618 (1972); *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797 (1968). The government

**2.** However, consent by the user of a rented vehicle who represented to the police that the vehicle was his was found sufficient when the lessor was absent and the rental agreement was not discovered until the search was in progress. *United States v. Jones*, 352 F.Supp. 369, 381 (S.D.Ga.1972), *aff'd*, 481 F.2d 1402 (5th Cir. 1973).

must prove by a preponderance of the evidence that Mr. Morales' consent and Corporal Durnan's search fell within the parameters established for a third-party consent. The United States Supreme Court has held that the permission to search is valid if "obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). The Court clarified that common authority is not based only upon the third party's property interest but upon mutual use and joint access and control of the area to be searched. *Id.* at n. 7. The Court must examine the limits of Mr. Morales' authority to consent to a search, as to Mr. Viera.

First, the Court will consider Mr. Morales' authority over the car and his property interest in the car. Mr. Viera rented the car and his name appeared on the rental agreement. Mr. Morales' name was not on the rental agreement. Therefore, any authority Mr. Morales had over the rental car derived from Mr. Viera and not from the rental company.

In *United States v. Padron*, 657 F.Supp. 840, 846–48 (D.Del.1987), this Court examined the authority of a non-owner driver to consent to the search of a car when the owner was present. In holding that the driver could not consent to the search of the car owner's luggage, the Court noted that Padron's privacy interest was "coterminus [sic] with his authority to consent." *Id.* at 847. The Court found that Padron had no privacy expectation concerning Mr. Rubio's luggage and therefore lacked standing to challenge the search. *Id.* at 843–44.

This Court has also found that Mr. Morales had no expectation of privacy as to the area inside the rear seat, and lacks standing to contest the search. Based upon his status as the driver of a car rented by another who is present at the search, Mr. Morales' consent to search this area would not be valid as to Mr. Viera. The Court, however, will examine whether the privacy interest needed to consent and the scope of third-party consent are in fact coterminous in this case, and mandate the same result as *Padron*.

The government asserts as to Mr. Viera that it is unreasonable to permit Mr. Morales as the driver to consent to a search of the common areas of the car, but not to a search of the secret compartment. The burden is on the government to prove the validity of a third-party consent by establishing "mutual use of the property" as demonstrated by "joint access or control." *See Matlock*, 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7. Third-party consent does not "automatically ... extend to the interiors of every discrete enclosed space capable of search within the area.... [E]ach such enclosed space stands on its own bottom for this purpose." *United States v. Block*, 590 F.2d 535, 541 (4th Cir.1978). Courts have consistently found that a third party may consent to the search of some areas but not others. The Fourth Circuit found that a mother could not consent to the search of a footlocker owned by her son who resided with her. *Id.* at 537, 542. An apartment lessee cannot consent to the search of a bag belonging to a guest. *United States v. Gilley*, 608 F.Supp. 1065, 1069 (S.D.Ga.1985). In upholding the examination of closed containers during an automobile search based on probable cause, the Supreme Court commented that "[a]n individual undoubtedly has a significant interest that the upholstery of his automobile will not be ripped or a hidden compartment within it opened." *United States v. Ross*, 456 U.S. 798, 823, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982). Consent by a third party does not justify a search of this area.

Although the cited cases on third-party consent concern the search of another's luggage, the search of the hidden compartment is analogous. The area was enclosed and hidden. It was not an area to which Mr. Morales would have access as the driver of the vehicle, the only connection established by the government in the suppression hearing. Mr. Viera undoubtedly had an expectation of privacy as to that area. It was not an area of common access or control and Mr. Morales' consent was invalid with regard to this secret compartment as to Mr. Viera.

Another concern is the reasonableness of the investigating officer's good faith belief that a non-owner driver could consent. *See Padron,* 657 F.Supp. at 847. In *Padron,* one officer talked to Mr. Padron and obtained a signed consent from him, even though Padron stated he was not the owner of the car. *Id.* Another officer talked to Rubio and discovered he was the owner, but failed to obtain his consent. *Id.* The Court noted that the officers could have further questioned either suspect "without endangering themselves or their investigation." The Court concluded that "[t]he officers' failure to inquire into Padron's authority or seek Rubio's consent was unreasonable," and there was, therefore, no good faith reasonable belief. *Id.* at 847–48.[3]

Remarkably similar facts are now presented. Mr. Morales signed the consent, not Mr. Viera, the passenger and lessee of the car. The drugs were found in a hidden compartment behind the rear seat.

Accordingly, Corporal Durnan did not have a reasonable good faith belief in the validity of Mr. Morales' consent. The rental agreement put Corporal Durnan on notice that Mr. Morales was not the lessee, and Corporal Durnan could have ascertained that the person named in the rental agreement was present in the car, without endangering himself or the investigation.

The Court holds that, as to Mr. Viera, Mr. Morales' consent was invalid with respect to the search of the hidden compartment in which the drugs were found. The evidence must be suppressed as to Mr. Viera.[4]

**Conclusion**

Defendant Morales' motion to suppress will be denied. Defendant Viera's motion to suppress will be granted.

---

**3.** In *Padron* the officers detected the odor of marijuana as they approached the car, and the Court upheld the search as based upon probable cause. *Padron,* 657 F.Supp. at 848–49.

**4.** The Court notes that as the lessee of the vehicle Mr. Viera could have consented to a "complete" search of the entire vehicle, including the area inside the rear seat.