UNITED STATES of America, Plaintiff,

v.

Ramon E. OSPINA and Margarita M. Barrera, Defendants.

Crim. A. No. 87–101 MMS.

United States District Court, D. Delaware.

Feb. 2, 1988.

Edmond Falgowski, Asst. U.S. Atty., Dept. of Justice, Wilmington, Del., for plaintiff.

Theopalis K. Gregory, of Gregory & Gregory, Wilmington, Del., for defendant Ospina.

Donald E. Pease, Delaware Law School, Wilmington, Del., for defendant Barrera.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

On October 21, 1987 Corporal Robert Durnan of the Delaware State Police stopped Margarita Barrera and Ramon Ospina for speeding on Interstate 95 in Delaware. Mr. Ospina signed a consent to search. Corporal Durnan found cocaine underneath the rear seat of the car and arrested Ms. Barrera and Mr. Ospina. Each defendant has separate counsel and has filed motions to suppress the physical evidence. An evidentiary hearing was held on the motions on December 9, 10, and 11, 1987. Defendants contend the traffic stop was illegal, the consent given by Mr. Ospina was invalid and the law enforcement officials had no basis for searching the car or Ms. Barrera's suitcase and purse. The Government argues that, as the passenger in the car, Ms. Barrera lacks standing to contest its search.

## I. FINDINGS OF FACT

On October 21, 1987 Corporal Durnan stopped a Toyota station wagon with Florida license plates for exceeding the speed limit on Interstate 95 (I–95). Corporal Durnan was driving northbound on 95 in an unmarked police car when he observed the Toyota also going northbound on 95. He believed the car to be speeding, paced it for two-tenths of a mile and clocked the car at 65 m.p.h. in a 55 m.p.h. zone. After completing his "clock," the officer activated his flashers and pulled the Toyota over to the right shoulder of I–95.

After defendants' car stopped, Corporal Durnan pulled behind their car and went over to the driver's side. Ramon Ospina was driving and Margarita Barrera was on the passenger side of the front seat. The officer asked Mr. Ospina for his license and registration which were promptly produced. The car was registered in Mr. Ospina's name. Corporal Durnan observed that Mr. Ospina's hands were shaking as he handed over the license and registration.

The officer requested Mr. Ospina get out of the car, and held the handle of the door as the driver opened it. Gesturing where he wanted him to go, the officer directed Mr. Ospina to the shoulder between the two cars. Corporal Durnan advised Mr. Ospina that he was stopped for exceeding the speed limit.

Corporal Durnan then talked with Ms. Barrera and returned to where Mr. Ospina was standing between the two cars. He

asked Mr. Ospina to be seated in the patrol car and gestured that he wanted him to sit on the passenger side. Corporal Durnan placed Mr. Ospina in the car for safety and convenience. The traffic noise was loud and the chilly weather made it uncomfortable to talk outside.

He maintained possession of Mr. Ospina's license and registration, and stated to the Court Mr. Ospina was not free to leave the patrol car until he either gave Mr. Ospina a ticket or completed his investigation. Corporal Durnan agreed the investigation started prior to putting Mr. Ospina in his car.

Once seated beside Mr. Ospina, the officer inquired if he had any weapons, untaxed cigarettes or fireworks in the car and Mr. Ospina responded negatively. As he asked the question Corporal Durnan gestured to his gun and may have also pretended to smoke a cigarette. Corporal Durnan stated that he deliberately did not ask about drugs because it would then be harder to get a consent to search.

Corporal Durnan produced a standard Delaware consent to search form in Spanish, which Mr. Ospina signed. The form was on a clipboard. Mr. Ospina maintains that the top half of the form was covered and he believed he was signing a speeding ticket. Corporal Durnan testified that the form was not covered in any way and Mr. Ospina appeared to read the form before he signed it. The Court concludes that the form was not covered and Mr. Ospina had an opportunity to read the entire form before he signed it. Corporal Durnan never threatened Mr. Ospina in any way or made any promises to obtain the consent.

After obtaining the consent, Corporal Durnan went over to the Toyota, asked Ms. Barrera to get out and began his search. Mr. Ospina remained in the patrol car, parked behind the station wagon. After checking the front seat and the glove compartment, he looked in the rear seat area. He noticed a white leather strap protruding from underneath the rear seat behind the driver. He pulled up the seat and found a white leather purse. Feeling a hard object, he opened the purse and found two kilo-

grams of what later turned out to be cocaine wrapped in blue plastic. Based on his experience on highway patrol and as an undercover drug officer, Corporal Durnan testified that he has reason to believe there was cocaine in the bag before he actually opened it, as well as perhaps a weapon. The white bag was lying on top of a pair of women's black suede pants. When Ms. Barrera later tried the pants on, they were substantially too small for her and she could not close them in the front.

After finding the cocaine, Corporal Durnan arrested and handcuffed Mr. Ospina and Ms. Barrera and gave them *Miranda* warnings. At that point, five to ten minutes after the initial stop, he called RECOM for assistance with transportation. Although Corporal Durnan testified that it was standard operating procedure to call RECOM with the license plate of a speeding car and when leaving the patrol car, Corporal Durnan did not do so. After making the arrest, Corporal Durnan did place a second call to RECOM to check the driver's license and car registration.

A large suitcase and a purse owned by Ms. Barrera were not searched at the scene. The suitcase was in plain view in the back of the Toyota station wagon. A Drug Enforcement Agency (DEA) agent later conducted a search of Ms. Barrera's suitcase at the DEA office and found a mixture of men's and women's clothing. The day after the arrest the agent also searched Ms. Barrera's purse and discovered a power of attorney for the Toyota registered to Mr. Ospina.

With regard to her relationship to Mr. Ospina, Ms. Barrera testified that she knew him as a friend and he offered her a ride as far as Philadelphia so that she could visit her sister in New York. Both Mr. Ospina and Ms. Barrera are natives of Columbia. Before they left Florida, Mr. Ospina gave her a power of attorney for safekeeping. Neither she nor Mr. Ospina wrote anything on that power after he gave it to her. The power of attorney authorized the designated person to transfer the title to Mr. Ospina's Toyota station

wagon. It was completed and signed, but the name of the designee was left blank.

On the way up from Miami, Ms. Barrera drove for about four hours. She placed some of Mr. Ospina's clothing in her suitcase because his bags were packed too tight. Although she had no money with her on the trip from Miami, Ms. Barrera testified that Mr. Ospina had said he would see she got from Philadelphia to her sister's in New York.

Mr. Ospina asserts that he does not speak nor understand English and did not comprehend that he was consenting to a search of the car by Corporal Durnan. During the suppression hearing, all communication with Mr. Ospina was through an interpreter. At the time of the hearing Mr. Ospina was thirty-eight years old. He is from Columbia where he attended school as far as the fifth grade. He did not study English while in school. He has spent the past year in Miami and also about a year and a half prior to that in Miami.

Mr. Ospina maintained that he understood some of what Corporal Durnan was saying to him by the gestures he used. Corporal Durnan stated that he asked the questions in English and Mr. Ospina responded in English without indicating any problem with understanding. Mr. Ospina testified that the English words license and registration are very similar to the Spanish. He said Corporal Durnan gestured when asking him to move, and gestured to clarify his question about cigarettes or weapons. He believed the paper he was signing was a traffic ticket and never understood Corporal Durnan to be asking for permission to search the car. He said he responded to Corporal Durnan's questions by saying," yes, yes" whether he understood the question or not. He stated that he never gave Corporal Durnan any information because he never understood the questions.

Ms. Barrera speaks both Spanish and English. She stated that she has never heard Mr. Ospina speak English and did all the ordering for them on the way up from Miami. Detective Alverio of the Wilmington Police Department spoke with Mr. Ospina at the DEA office after the arrest.

Detective Alverio is fluent in both Spanish and English and spoke to Mr. Ospina in Spanish. During the questioning by Detective Alverio, Mr. Ospina indicated by nodding his head that he understood quite a lot of English. However, Detective Alverio never spoke with the defendant in English.

## II. ANALYSIS

### A. *Validity of Stop*

Defendants contend that Corporal Durnan's stop of their vehicle was invalid. Automobile stops are allowed under the Fourth Amendment, if based on a reasonable, articulable suspicion that the driver of the vehicle or the vehicle is in violation of the law. *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979); *United States v. Fong*, 662 F.Supp. 1319, 1321 (D.Del.1987). Objective factors must support this suspicion. *United States v. Hawkins*, 811 F.2d 210, 213–15 (3d Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987); *United States v. Padron*, 657 F.Supp. 840, 845 (D.Del.1987). Testimony in the suppression hearing indicates that the police officer had an objectively reasonable suspicion that defendants' vehicle was speeding. This suspicion and the clocking of the vehicle formed the basis for the stop. The Court concludes that the stop was valid.

Further, the Court finds that defendants have not established that Officer Durnan based his stop of defendants' vehicle upon a drug courier profile. In determining the validity of a stop, the Court must look for a reasonable, objective basis and not at the subjective intent of the police officer. *Hawkins*, 811 F.2d at 213–15. The Court has already found Corporal Durnan to have had a reasonable basis for his stop.

### B. *Standing of Defendant Barrera to Contest the Search*

The Government urges that as the passenger in a car owned and driven by co-defendant Ospina, Ms. Barrera lacks the standing necessary to contest the search.

The United States Supreme Court has held that "only defendants whose Fourth

Amendment rights have been violated [may] benefit from the [suppression] rule's protections." *Rakas v. Illinois*, 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). The Court must determine whether the defendant has a "legitimate expectation of privacy in the invaded place." *Id.* at 139, 99 S.Ct. at 428 (citing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). If the area searched was not within the defendant's privacy zone, a defendant's constitutional rights were not violated and she may not contest the search. *Rakas*, 439 U.S. at 133–34, 99 S.Ct. at 425. The proponent of the motion to suppress has the burden of establishing that her Fourth Amendment rights were violated. *Id.* at 130 n. 1, 99 S.Ct. at 424 n. 1.

In *Rakas*, the defendants were passengers in a vehicle owned and driven by another. 439 U.S. at 130, 99 S.Ct. at 423. They sought to exclude a sawed-off rifle found underneath the front passenger seat and ammunition found in the glove compartment. *Id.* The Court found that defendants had not provided any facts to demonstrate any privacy interest in these areas, "in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy." *Id.* at 143–49, 99 S.Ct. at 433.

Similarly, in *Government of Virgin Islands v. Williams*, 739 F.2d 936, 938–39 (3d Cir.1984), the United States Court of Appeals for the Third Circuit held that passengers in a car had no expectation of privacy in the areas inside the ripped ceiling of the car, under the seat or inside a torn seat. This Court found in *United States v. Padron*, 657 F.Supp. 840, 844 (D.Del.1987), that the non-owner driver lacked standing to contest the search of luggage belonging to the owner who was present in the car at the time of the arrest. Recently this Court held the driver of a car rented by another present at the time of the search lacked standing to contest the search of the inside of the car's rear seat. *United States v. Morales*, 676 F.Supp. 560, 565–66 (D.Del. 1987), *appeal docketed*, No. 87–3841 (3d Cir. Dec. 12, 1987).

■ Ms. Barrera asserts she has a privacy interest in the Toyota and its contents. She bases her contention upon the time she and Mr. Ospina spent together driving from Miami, the fact that she drove, as well as her possession of the power of attorney.

The DEA found the power of attorney in Ms. Barrera's purse. The form was notarized August 20, 1987 and was completed except for the name of the person receiving the power of attorney. The form authorized the designated person to transfer title to Mr. Ospina's Toyota. Ms. Barrera testified that Mr. Ospina gave her the paper to hold just after they started their trip to Philadelphia. Mr. Ospina stated he brought the power of attorney in order to sell the car when he reached Philadelphia. Although Ms. Barrera might have filled in her name and transferred title to herself, she never did so and title remained with Mr. Ospina.

Ms. Barrera's status in the car was that of passenger. The fact that she drove for four hours and they travelled up from Miami together does not substantially alter her status as passenger. *See Morales* at 564. She had no reasonable expectation of privacy in the area underneath the rear seat where the cocaine was found. On the other hand, Ms. Barrera clearly had an expectation of privacy regarding her maroon suitcase and her purse, and may contest the search of these items.

I find Ms. Barrera as a passenger lacks the standing to contest the search of the area underneath the rear seat of the car owned and driven by her co-defendant, who was present at the time of the search; but has the standing necessary to contest the search of her purse and suitcase.

## C. *Validity of Ospina's Consent to Search*

Defendant Ospina urges three grounds in support of his position that his consent to search was invalid: one, the consent was the product of an illegal stop; two, the search exceeded the scope of the consent;

and three, the consent was not voluntary.[1] The Court will address the issues in that order.

The stop was legal for the reasons stated above. Therefore, defendant's argument based upon the illegality of the stop is without merit.

■ Ospina also contends that any consent to search was invalid because Officer Durnan requested permission to search for weapons, fireworks or untaxed cigarettes, but not drugs, believing that consent would be refused if he made known his interest in drugs. The United States Supreme Court has held the scope of a consent search is limited to the specific authorization given. *Walter v. United States*, 447 U.S. 649, 656–57, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980). Other courts have elaborated on the parameters of a consent search. Holding a defendant's consent to search for narcotics did not authorize the officer to read through the defendant's papers, the United States Court of Appeals for the Seventh Circuit in *United States v. Dichiarinte*, 445 F.2d 126, 128–30 (7th Cir.1971), noted that contraband other than narcotics found during a search within the parameters of the consent would probably be admissible. *Id.* at 130. Moreover, the subjective intent of the officer conducting the search is immaterial to the legality of the search. *See Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed. 2d 168 (1978); *United States v. White*, 706 F.2d 806, 808 (7th Cir.1983).

If Mr. Ospina gave no written consent, it is argued his oral consent is limited to the search for untaxed cigarettes, fireworks or guns. Corporal Durnan found the cocaine underneath the rear seat, also a reasonable place to search for the items covered by the oral consent. I find Corporal Durnan did not exceed the scope of the oral consent. The fact that Mr. Ospina did not consent specifically to a search for drugs does not invalidate the search. Moreover, Mr. Ospina stood by during the search and did not retract or narrow the scope of the search.

*See United States v. Espinosa*, 782 F.2d 888, 892–93 (10th Cir.1986).

In addition to the oral consent, Mr. Ospina signed a standard Delaware State Police consent to search in Spanish authorizing a "complete search" and the removal of "any letters, documents, papers, materials, or other property." Other circuits have noted that the language of written consent governs the scope of the search. *See United States v. Kapperman*, 764 F.2d 786, 794–95 (11th Cir.1985), and *United States v. Covello*, 657 F.2d 151, 154–55 (7th Cir. 1981). Corporal Durnan's search was clearly within the scope of the broad written consent signed by Mr. Ospina.

Mr. Ospina, however, contends that the written consent to search is invalid. He argues that he was effectively in custody after being placed in Corporal Durnan's car and should have been advised of his right to refuse consent. In addition defendant maintains that his cultural background and the circumstances of the arrest led him to believe he had no choice but to consent to the search.

The Supreme Court has established that when the government seeks to justify the lawfulness of a search based upon consent, the burden is on the government to prove by a preponderance of the evidence the consent was "freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). *See also Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972).

■ The voluntariness of the consent is determined by the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed. 2d 854 (1973). In *Schneckloth*, the Court listed as factors to be considered: the age and intelligence of the person consenting, the lack of advice on constitutional rights, repeated and prolonged questioning and the use of physical punishment. *Id.* at 226, 93 S.Ct. at 2047. Any implicit or explicit

---

1. Mr. Ospina joined the arguments concerning illegality of the stop and scope of the search raised by Ms. Barrera. The Court, therefore, will consider these arguments even though Ms. Barrera lacks standing to contest the seizure of the cocaine.

coercion, implied threats or covert force will invalidate the consent. *Id.* at 228, 93 S.Ct. at 2048. Knowledge of the right to refuse consent alone is not determinative of whether the consent was voluntary. *Id.* at 227, 93 S.Ct. at 2047. Limiting its holding to subjects of search who are not in custody, the Court found that no formal waiver of rights was required. *Id.* at 246–47, 93 S.Ct. at 2057–58. *See also, United States v. Mendenhall,* 446 U.S. 544, 559, 100 S.Ct. 1870, 1879, 64 L.Ed.2d 497 (1980) (issue not whether defendant acted in self-interest but whether consent voluntary); *United States v. Montoya,* 632 F.Supp. 1069, 1074 (D.Del.), *aff'd,* 804 F.2d 1249 (3d Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1326, 94 L.Ed.2d 178 (1987) (consenter's subjective feeling that he had no choice not determinative).

▮ The fact that Ospina gave a consent to search while in custody does not by itself create coercion. *See United States v. Watson,* 423 U.S. 411, 424–25, 96 S.Ct. 820, 828, 46 L.Ed.2d 598 (1976). Defendant's argument that, once placed inside the police car, he was in custody, and therefore *Miranda* warning should have been given, is without merit. Mr. Ospina was stopped for speeding and placed in the patrol car by Corporal Durnan for safety and convenience reasons. The weather was such that it was uncomfortable to be talking outside. The United States Supreme Court has compared a roadside stop for a traffic violation to a *Terry* stop,[2] *Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 3149, 82 L.Ed.2d 317 (1984), and found that safety and security are legitimate law enforcement reasons for moving during a *Terry* stop. *Florida v. Royer,* 460 U.S. 491, 504–05, 103 S.Ct. 1319, 1328, 75 L.Ed. 2d 229 (1983). *Miranda* warnings are only required prior to an interrogation if a person's freedom is curtailed to the degree associated with formal arrest. *Berkemer,* 468 U.S. at 440, 104 S.Ct. at 3150. Mr. Ospina's freedom was not curtailed to this

degree. In order for Ospina's consent to be valid, Corporal Durnan was not required to give *Miranda* warnings or advise Mr. Ospina that he had a right to refuse consent. *See Watson,* 423 U.S. at 424, 96 S.Ct. at 828. Corporal Durnan's failure to give these warnings is just one factor to be considered in deciding whether the consent was voluntary.

▮ One area of concern is Mr. Ospina's fluency in English. At the time of the hearing, Mr. Ospina was 38 years old, and a native of Columbia. He had spent a total of two and a half years in this country, all of it in Miami, Florida which has a large Spanish speaking population. He attended school up to the fifth grade in Columbia. Corporal Durnan spoke to Mr. Ospina entirely in English and indicated that Mr. Ospina responded to him in English. Corporal Durnan agreed that he made many gestures in speaking to Mr. Ospina that could have aided Mr. Ospina in his understanding. Mr. Ospina states he speaks no English, which was confirmed by his co-defendant, Ms. Barrera. Detective Alverio of the Wilmington Police conducted an interview with Mr. Ospina entirely in Spanish during which Mr. Ospina claimed to speak English pretty well. The Court finds Mr. Ospina's understanding of English to be severely limited. However, Mr. Ospina signed a consent form in Spanish, in which Mr. Ospina is fluent.

Based upon the totality of the circumstances test, the Court concludes Mr. Ospina gave his consent voluntarily. Mr. Ospina was thirty-eight years old and had been in this country for a total of two and a half years at the time of the stop. He was of sufficient age and had sufficient exposure to this country to understand what was happening. He completed the fifth grade and is of at least average intelligence. Mr. Ospina gave both verbal and written consent while in the patrol car with Corporal Durnan. Corporal Durnan had his weapon

---

**2.** In *Terry v. Ohio,* 392 U.S. 1, 26–27, 88 S.Ct. 1868, 1882–83, 20 L.Ed.2d 889 (1968), the Supreme Court held that law enforcement officials may briefly detain individuals reasonably believed to be armed and dangerous. An official

may also briefly detain a person reasonably suspected of committing a crime for further investigation. *United States v. Brigoni-Ponce,* 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975).

holstered during the entire time he was with Mr. Ospina. There was no show of force against Mr. Ospina; only Corporal Durnan was in the car with him.

■ Corporal Durnan made no threat or promises, or in any way coerced Mr. Ospina into giving his oral or written consent. Mr. Ospina had an opportunity to read the consent form before signing it, and it appeared to Corporal Durnan that he did so. Although the consent to search form indicates that the consenter has been advised that he has the right to refuse consent, no evidence was introduced to indicate that Mr. Ospina was so advised. Given the other factors, the Court does not find this omission to invalidate the consent. In addition neither the fact that Mr. Ospina felt he had no choice but to consent, nor the fact that it was against his self-interest to sign is determinative. See, Mendenhall, 446 U.S. at 558, 100 S.Ct. at 1879; Montoya, 632 F.Supp. at 1074. Once the officer began his search of the car, Mr. Ospina never objected. Mr. Ospina was in the car only a brief time. It was five to ten minutes from when Corporal Durnan stopped Mr. Ospina until he called for assistance after finding the cocaine and making the arrests. Mr. Ospina was neither actively coerced nor in a coercive environment, and he voluntarily signed the consent to search.

The Court, therefore, finds that the consent to search was given voluntarily and is valid. Defendant Ospina's motion to suppress physical evidence will be denied.

### D. Validity of Search of Ms. Barrera's Purse and Suitcase

Ms. Barrera's purse and suitcase were both searched at the DEA office after she and Mr. Ospina had been arrested. She seeks to suppress any evidence found in either container. The Court found above that she has standing to contest the search of these items. The Government maintains that the search was valid based on either of three grounds: one, probable cause existed prior to the search; two, the search was made incident to a valid arrest; and, three, the search was a valid inventory search.

Because the Court finds the search valid as an automobile search based upon probable cause, it declines to reach the argument raised by the Government based upon search incident to arrest.

■ I cannot conclude the search was a valid inventory search because of a failure of proof by the Government. An inventory search is only valid if conducted in accordance with reasonable established police regulations. See Colorado v. Bertine, 479 U.S. 367, 107 S.Ct. 738, 740–42, 93 L.Ed.2d 739 (1987). At the suppression hearing, the Government failed to introduce any evidence of regulations under which the DEA acted in making an inventory of the contents of Ms. Barrera's purse and suitcase.

■ The United States Supreme Court in United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), defined the requirements for and scope of a warrantless automobile search. Officers may validly search a vehicle without obtaining a warrant if they have probable cause to believe the vehicle contains contraband. Id. at 809, 102 S.Ct. at 2164.[3] Once the officers have probable cause, they may search all parts of the vehicle and any containers found therein in which they believe the object of the search may be found. Id. at 824, 102 S.Ct. at 2172.

In United States v. Johns, 469 U.S. 478, 487–88, 105 S.Ct. 881, 886–87, 83 L.Ed.2d 890 (1985), the Supreme Court determined that a search valid under Ross may be conducted at a time and place removed from the initial seizure of the vehicle. The warrantless search of the automobile need not occur "contemporaneously with its lawful seizure" and may occur after the vehicle is immobilized and in police custody. Id. at 484, 105 S.Ct. at 885. Finding that officials had probable cause to believe a truck contained contraband at the time of seizure, the Court held the Government was entitled to remove packages from the truck and search them three days later at a

---

3. The facts supporting probable cause must be sufficient to justify the issuance of a warrant, even though one was not actually obtained. Ross, 456 U.S. at 809, 102 S.Ct. at 2164.

DEA warehouse. *Id.* at 487–88, 105 S.Ct. at 886–87.[4]

Based upon the facts in evidence, I hold law enforcement officials had probable cause to search Mr. Ospina's Toyota station wagon once Corporal Durnan found the cocaine pursuant to the consent search. Both Ms. Barrera's suitcase and her purse were in the automobile and could be searched. The removal of both items to the DEA office and delay of the search until several hours later or the day following the arrest do not invalidate the search.

The Court finds valid the search of the suitcase and purse based upon probable cause to search the automobile after discovering the cocaine. Ms. Barrera's motion to suppress evidence found in her suitcase and purse will be denied.

An order will be entered denying Mr. Ospina's and Ms. Barrera's motions to suppress physical evidence.

---

**4.** In *Johns,* the Court distinguished its earlier ruling in *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). In *Chadwick* the police had probable cause to believe a locked footlocker contained marijuana, but seized the footlocker without a warrant after it was placed in an automobile. *Id.* at 3–4, 97 S.Ct. at 2479. The Court held inapplicable the automobile exception to the warrant requirement, and stated that once the footlocker was in police custody, the police must obtain a warrant prior to conducting a search. *Id.* at 13, 97 S.Ct. at 2484. The Court found that in *Chadwick* the police had probable cause to believe that the container, a footlocker, held contraband, while in *Johns* the police had probable cause to believe the vehicle itself concealed contraband. *Johns,* 469 U.S. at 482–83, 105 S.Ct. at 884. The automobile exception, therefore, did not apply to the footlocker in *Chadwick. Id.* The facts of this case make *Johns* and *Ross* applicable, and not *Chadwick.* The police had probable cause to believe the automobile contained contraband, not just probable cause related to a container placed in an automobile.