**UNITED STATES of America, Plaintiff,**

v.

**Jorge OSPINA, Defendant.**

**No. CR87–0199G.**

United States District Court,
D. Utah, C.D.

Feb. 19, 1988.

Wayne T. Dance, Asst. U.S. Atty., Salt Lake City, Utah, for plaintiff.

Solomon Chacon, Salt Lake City, Utah, for defendant.

## ORDER

J. THOMAS GREENE, District Judge.

This matter came before the court on February 17, 1988, pursuant to defendant's Motion to Suppress evidence allegedly obtained in violation of the Fourth Amendment to the United States Constitution. The United States was represented by Wayne T. Dance, Assistant United States Attorney and the defendant was represented by Solomon J. Chacon. The parties submitted memoranda and presented oral argument, after which the court took the matter under advisement. Being now fully advised, the court sets forth its Memorandum Decision and Order.

## FACTUAL BACKGROUND

On November 21, 1987, the defendant, Jorge Ospina, age 26, a Columbian resident alien living in New York City, was driving a motor vehicle westbound on I–80, in Tooele County, Utah, when Utah Highway Patrol Trooper, Ronald Kirby, stopped the vehicle for an apparent license plate sticker violation and for an obstruction in the windshield of the vehicle. Since the vehicle stopped near moving traffic, Officer Kirby approached the vehicle on the right side and gave the reasons for the stop. The defendant and the passenger, Alex Cantillo, both produced driver's licenses and explained that a valid New York sticker was on the front window. At the officer's request, Mr. Cantillo readily retrieved from the glove compartment a valid New York vehicle registration card, in the name of Julio Suarez, at an address in Queens, New York. The officer, investigating whether the vehicle was stolen, interviewed both occupants outside the car in an attempt to determine true ownership of the vehicle. Upon questioning the occupants, it was apparent that the passenger could speak English, but that apparently the defendant could not speak English. Because of the language barrier, many questions directed to the defendant had to be repeated. The officer testified that he asked the defendant if he could search the vehicle, and that the defendant responded "yes." However, the evidence on this point is sharply disputed, and the government acknowledges that the defendant may not have fully understood the request. The officer then requested, and obtained, the voluntary consent of Alex Cantillo before thoroughly searching the vehicle. Neither occupant objected to the search of the vehicle. The officer then requested to search the trunk of the vehicle, after which Mr. Cantillo gave his consent and produced a set of keys to open the trunk. During a second search of the vehicle, the officer noticed that the molding, where the seat belts go into the car, was missing. He then reached in the hole and discovered a package containing a substance which was later field tested positive for cocaine. Based on that evidence, the defendant was arrested, a search warrant was obtained for the vehicle, and other packages of cocaine were found in the hidden compartment. On December 10, 1987, the Grand Jury issued a two-count indictment against the defendant, charging him with Conspiracy, and Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846 and 18 U.S.C. § 2.

The defendant moved the court for an order to suppress the evidence discovered during the officer's search of the vehicle, alleging that it is the fruits of a warrantless search without the defendant's consent in violation of the Fourth Amendment. The government, on the other hand, claims that the defendant lacks standing to challenge the search of the vehicle or, in the alternative, that a legal search was conducted pursuant to the voluntary and knowing consent of his companion, Alex Cantillo.

## ANALYSIS

### A. *Standing*

Defendant's testimony concerning his possession of the automobile in question was not credible or believable. The defendant testified that "Julio," the owner of the vehicle in question, which was a taxi cab, called him at a New York restaurant and offered to pay him $1,000 to drive the

vehicle from New York to San Francisco, even though the defendant did not know Julio's last name, had only met Julio on three prior occasions and did not know his address. Moreover, the defendant testified that upon his arrival in San Francisco, he was to meet Julio in a "large park near the airport," at an unspecified location, date and time. He had no phone number of other way of contacting Julio. Under defendant's testimony he and his companion Cantillo, alternated driving the vehicle across the country. The court finds under the circumstances that defendant could have had no reasonable expectation of privacy.

The government called special agent Paull to testify concerning his follow up investigation of this incident. His testimony indicated that Julio Suarez, the registered owner of the vehicle, had not lived at the address on the registration card for the last twelve years, and was otherwise unable to be located. He also testified that he contacted the owner of a tire store in Illinois, where the defendant and his companion, Alex Cantillo, allegedly purchased a tire for the vehicle. He testified that when the owner asked what name should be put on the invoice, the defendant and Cantillo talked in Spanish and then said "George Ramos." The government introduced a copy of this invoice into evidence. Additionally, special agent Paull testified that another invoice found in the vehicle indicates that the same vehicle was tuned up in Oakland, California two weeks prior to the arrest, and was paid for by a Carlos Pina. The government also introduced this invoice which was received in evidence.

■ It is clear that one who challenges a search or seizure has the burden of establishing an infringement of his or her *personal* Fourth Amendment rights. *Rakas v. Illinois*, 439 U.S. 128, 140, 99 S.Ct. 421, 428–29, 58 L.Ed.2d 387 (1978). This concept is akin to traditional standing requirements. In *United States v. Erickson*, 732 F.2d 788 (10th Cir.1984), the Tenth Circuit addressed the *Rakas* requirement of a personal right to privacy invasion. In that case, the court held that the defendant

lacked standing to raise Fourth Amendment claims, where the defendant failed to show that he was authorized by the owner to possess, use, or fly an aircraft in which marijuana was discovered. Similarly, in *United States v. Obregon*, 748 F.2d 1371 (10th Cir.1984) the court, citing *Erickson* with approval, held that the defendant lacked standing to challenge a warrantless search of an automobile rented by another person, despite the defendant's claim that he had received the renter's permission to use the vehicle. *Id.* at 1375.

■ Based on the evidence presented at the Suppression Hearing and the law of the Tenth Circuit on Fourth Amendment standing, the court finds that the defendant did not have a legitimate expectation of privacy in the vehicle he was driving, and, therefore, he does not have standing to challenge the search of the vehicle by the Utah Highway Patrol.

Furthermore, defendant had no reasonable expectation of privacy as to the compartment where the cocaine was hidden. The defendant denied that he had placed the cocaine there, or knew that it was there, so he could not have expected privacy with respect to it.

In *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court set forth a two-prong test for a justifiable expectation of privacy. First, the defendant must demonstrate an actual or subjective expectation of privacy in the area searched. Second, the defendant must show that such expectation is one that society is prepared to recognize as reasonable. The Supreme Court has noted further, "the Fourth Amendment does not protect subjective expectations of privacy that are unreasonable or illegitimate." *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).

In a case strikingly similar to the instant case, *United States v. Lopez*, 761 F.2d 632, 636 (11th Cir.1985), the Eleventh Circuit held that two resident aliens, who were aboard a ship they claimed they had verbal permission from the owner to use, did not have a reasonable expectation of privacy in a secret compartment in the hull of the ship

which contained marijuana. The court noted that it is inconceivable that "society would recognize a reasonable expectation of privacy in the use of 'dead space' in the hull of a ship, sealed with permanent Fiberglass and painted to match the surrounding surfaces, for legitimate storage of personal items." *Id.* Thus, the court held that the defendants had no standing to challenge the Coast Guard's search of the compartment. *Id.* Accordingly, the defendant has failed to meet the second prong of the *Hudson v. Palmer* test.

### B. *Consent to Search the Vehicle*

■■■ A person in sole control of an automobile has a right to consent to a search thereof. However, the consent must be voluntary and not obtained by duress, coercion or misrepresentation. The burden is on the government to show that the defendant's consent to a warrantless search was voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). The Tenth Circuit has set forth the following requirements to show voluntary consent:

(1) There must be clear and positive testimony that consent was unequivocal and specific and fairly and intelligently given; (2) The Government must prove consent was given without duress or coercion, express or implied; and (3) The Courts indulge every reasonable presumption against the waiver of fundamental rights and there must be convincing evidence that such rights were waived.

*United States v. Lopez*, 777 F.2d 543, 548 (10th Cir.1985) (quoting *United States v. Abbott*, 546 F.2d 883, 885 (10th Cir.1977)).

■■■ So-called third party consents have also been recognized as exceptions to the warrant requirement. A third person can consent to a search of those items and premises over which he has a right of access and control, even if the premises or items are shared with another. In *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1971), the court held that where two persons share an apartment, either person has "common authori-

ty" to consent in the other's absence to a search of the areas they share in common, but not areas reserved for the other's exclusive use. The court defined "common authority" as follows:

Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical legal refinements, *see Chapman v. United States*, 365 U.S. 610 [81 S.Ct. 776, 5 L.Ed.2d 828] (1961) (landlord could not validly consent to the search of a house he had rented to another), *Stoner v. California*, 376 U.S. 483 [84 S.Ct. 889, 11 L.Ed.2d 856] (1964) (night hotel clerk could not validly consent to search of customer's room) but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common areas to be searched.

*Id.* at 171, 94 S.Ct. at 993. *See also United States v. De Parias*, 805 F.2d 1447 (11th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 3189, 96 L.Ed.2d 678 (1986); *United States v. Reeves*, 594 F.2d 536 (6th Cir.), *cert. denied*, 442 U.S. 946, 99 S.Ct. 2893, 61 L.Ed.2d 317 (1979); *United States v. Jones*, 580 F.2d 785 (5th Cir.1978). *See generally United States v. Lopez*, 777 F.2d 543, 548 (10th Cir.1985); *United States v. Espinosa*, 782 F.2d 888 (10th Cir.1986), acknowledging situations where a voluntary consent to the search was given by both the driver and the passenger.

■■■ In this case there was a consent search appropriate under the circumstances by Alex Cantillo, the passenger. The passenger showed particular knowledge about the car and its control and dominion by readily retrieving the registration card from the glove compartment without reference to or help from the defendant, by particular reference to the New York sticker on the window and by having and con-

trolling the keys when he opened the trunk for a voluntary search. He clearly authorized the search of the interior of the vehicle, which was done without objection by defendant and with his apparent consent and approval. There is no evidence to indicate that either the defendant or Mr. Cantillo had a superior right of access and control over the car. To the contrary even under the defendant's testimony the driving was done alternatively by himself and Cantillo.

Based upon the foregoing defendant's Motion to Suppress is denied.

IT IS SO ORDERED.