**UNITED STATES of America**

v.

**Lorgio D. MORALES, Jr.**

**UNITED STATES of America**

v.

**Luis L. VIERA.**

**UNITED STATES of America,
Appellant**

v.

**Luis L. VIERA, Appellee.**

No. 87–3841.

United States Court of Appeals,
Third Circuit.

Argued June 1, 1988.
Decided Nov. 16, 1988.

William C. Carpenter, Jr., U.S. Atty., Kent A. Jordan (argued), Asst. U.S. Atty., U.S. Dept. of Justice, Wilmington, Del., for appellant.

Joel DeFabio (argued), Malman, DeFabio & Lapidus, P.A., Miami, Fla., for appellee.

Before SEITZ, SLOVITER and HUTCHINSON, Circuit Judges.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

HUTCHINSON, Circuit Judge.

Appellee Luis Lazaro Viera (Viera) and co-defendant Lorgio Danilo Morales, Jr. (Morales) were charged with conspiracy and possession with the intent to distribute cocaine in violation of 18 U.S.C.A. § 2 (West 1969) and 21 U.S.C.A. §§ 841(a)(1), 846 (West 1981). Indictments were returned to the United States District Court for the District of Delaware. Both defendants filed motions to suppress evidence found during a warrantless search of defendants' vehicle. The district court denied Morales's motion to suppress but granted

Viera's. The government appeals the order suppressing the evidence as to Viera pursuant to 18 U.S.C.A. § 3731 (West Supp.1988). We have jurisdiction over this appeal pursuant to that section. The issue presented is whether a consent to search a rented vehicle, given by the driver rather than the actual lessee, extends to a hidden, but accessible area in the rear of the passenger compartment. I find that this consent is valid. Since Judge Seitz concurs as to the validity of the consent, we will reverse the order suppressing the evidence.

## I.

On September 10, 1987 Viera and Morales were travelling north in Delaware on Interstate 95 when they were stopped by Delaware state police corporal Robert J. Durnan (Durnan) for speeding. Corporal Durnan clocked the car, a late model Chevrolet with Virginia license plates, as travelling at 62 miles per hour in violation of the posted 55 mile per hour speed limit. He pulled the car over approximately one mile north of the Delaware–Maryland state line toll plaza.

Corporal Durnan approached the car and asked Morales, who was driving, for his driver's license and registration. Morales handed Corporal Durnan his Florida driver's license and the car's rental agreement, which Viera had retrieved from the glove compartment. Appendix (App.) at 64.

Corporal Durnan noted that the car was rented from Miami International Airport by Luis Viera.[1] The rental agreement's expiration date was August 29, 1987. Durnan also noted a 4,000–4,500 mile difference between the odometer reading and the mileage listed on the rental agreement.[2]

Corporal Durnan then asked Morales to step out of the car, told him that he had been stopped for speeding and asked him where he was going. Morales replied that

---

1. Morales was not listed on the rental agreement.

2. Corporal Durnan testified at the suppression hearing that the rental agreement had been altered and that there were additional papers attached to it. App. at 12. He testified that he

thought the agreement "appeared different" from others he had seen. *Id.* Based on this, as well as the mileage on the odometer and Morales's nervousness in responding to his questions, Durnan developed an interest in searching the car. *Id.* at 51.

he was going to North Bergen, New Jersey to visit relatives. Corporal Durnan then went to the passenger side of the car and asked Viera where he was going. Viera replied that he was going to Bergenfield, New Jersey to visit Morales's relatives.

Corporal Durnan asked Morales to join him in the front seat of his patrol car. While inside, he asked Morales if there were guns, fireworks or untaxed cigarettes in the car. Morales told him "no, you can look if you want." *Id.* at 17. Durnan produced a standard Delaware state police consent to search form in English, which Morales filled out. The consent form authorized a full search of the vehicle. *Id.* at 114. Durnan then returned to defendants' car and asked Viera to step out. Viera complied and stood next to the car as Durnan searched the front and back seat areas.[3] Durnan saw that the backrest of the back seat was "pulled slightly away from the rear deck." *Id.* at 19. He pulled the backrest forward and found two packages taped to the back foam portion of the seat. The packages contained cocaine. He arrested both defendants and advised them of their *Miranda* rights. It was not until after the arrest that Corporal Durnan learned that the passenger was Viera, the lessee of the rental car.

## II.

The district court found that the traffic stop was valid and denied Morales's motion to suppress the evidence based on an illegal stop. *United States v. Morales,* 676 F.Supp. 560, 562–63 (D.Del.1987). The district court also found that Morales lacked standing to contest the validity of the search, since he had no legitimate expectation of privacy in the compartment inside the rear seat. The court therefore denied Morales's motion to suppress.[4] *Id.* at 564–65.

The district court, however, concluded that Morales's consent was invalid as to Viera and granted Viera's motion to suppress the evidence. In determining whether the consent to search was justifiable based on a privacy interest in the hidden compartment, the district court found that since Morales had no privacy expectation in the compartment within the back seat, and since the lessee, Viera, was present at the search, Morales's consent to search "would not be valid as to Mr. Viera." *Id.* at 566. The court also found that the search was not justifiable as a valid third party consent because the hidden compartment "was not an area to which Mr. Morales would have access as the driver of the vehicle. . . . It was not an area of common access or control." *Id.*

Finally, the district court found that "Corporal Durnan did not have a reasonable good faith belief in the validity of Morales' [sic] consent." *Id.* at 567. The court found that the rental agreement put Durnan on notice that Morales was not the lessee of the car and that Durnan could easily have ascertained Viera's identity as the lessee of the car.[5]

## III.

Our review of the district court's order involves questions of both law and fact.

**3.** There is no evidence in the record that Viera protested the search.

**4.** This portion of the district court's order is not on appeal.

**5.** In its opinion, the district court relied on its previous decision in *United States v. Padron,* 657 F.Supp. 840 (D.Del.1987). In *Padron,* the court found that the facts did not demonstrate that the officer had a reasonable basis to believe that the driver, Padron, could authorize a search. First, Padron stated to one officer that he did not own the vehicle. That, reasoned the court, made the driver's apparent authority "at least questionable." *Id.* at 847. Second, the other investigating officer found out that Rubio, the passenger, owned the vehicle. Thus, the court stated, when the two officers conferred prior to the search, "[e]ach . . . had independent, reasonable bases to doubt the efficacy of Padron's consent, yet neither pursued the matter." *Id.* The district court held that the government could not rely on "Padron's authority, actual or apparent, [as the driver] to consent to the search of Rubio's luggage." *Id.* at 848. Holding that the officers' failure to inquire as to who had authority to consent to the search was unreasonable, the district court noted that "[t]o hold otherwise would condone, even encourage the police to avoid inquiries into factual circumstances in order to ensure 'good faith.'" *Id.*

We have plenary review over the court's legal conclusions but review the court's factual findings for clear error. *United States v. Mitlo*, 714 F.2d 294, 296 (3d Cir.), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 550, 78 L.Ed.2d 724 (1983).

The Supreme Court has held that a warrantless search is justified by a valid consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). The consent must be voluntarily made,[6] *id.*, and the person giving consent to search must have the authority to do so. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). Authority to consent to a search arises from:

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* at 171 n. 7, 94 S.Ct. at 993 n. 7. The government bears the burden of proving, by a preponderance of the evidence, that Morales's consent to search the car is valid as to Viera. *Id.* at 171, 94 S.Ct. at 993; *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972); *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968).

Under the *Matlock* test, a driver of a vehicle has the authority to consent to a search of that vehicle. As the driver, he is the person having immediate possession of and control over the vehicle. *See Delaware v. Ledda*, No. 87–07–0742 through 0744, 87–07–0814 through 0818 (Del.Super.Ct. April 20, 1987) [available on WEST-LAW, 1987 WL 4983] (available on LEXIS, State Library, Del. file) (driver's consent to search valid as to passengers due to driver's immediate possession and control of vehicle, as well as passengers' failure to contest consent, despite one being owner of car); *State v. Foster*, 33 N.C.App. 145, 234 S.E.2d 443 (owner or person having lawful possession and control of car may consent to its search), *cert. denied*, 293 N.C. 255, 237 S.E.2d 537 (1977). As driver, he also has general access to all areas of the vehicle.[7] Therefore, a driver has the requisite "joint access and control" giving rise to the authority to consent to a full search of a vehicle. Because a driver has control over the entire vehicle, that driver may consent to a full search of the vehicle, including its trunk, glove box and other components. *See United States v. Espinosa*, 782 F.2d 888 (10th Cir.1986) (during search based on consent of driver and passenger/owner, officer, while searching trunk, looked under trunk rug, in trunk padding and in luggage; while searching passenger compartment, looked in glove box, under seats, dashboard and rugs; in examining back seat, removed back seat, spotted two screws missing from left rear quarter panel, lifted up loose corner of panel and discovered cocaine); *United States v. Lopez*, 777 F.2d 543, 546 (10th Cir.1985) (officer, using screwdriver found in glove compartment, removed stripped screws from speakers in rear of station wagon to trace strong ether odor during consent search); *United States v. Diaz–Albertini*, 772 F.2d 654, 655 (10th Cir.1985) (officer, noticing heaviness of trunk door during consent search, unscrewed metal plate and discovered package of cocaine inside door), *cert. denied*, — U.S. —, 108 S.Ct. 82, 98 L.Ed.2d 45 (1987).

In this case Morales, as driver, had immediate possession of and control over the car. By giving Morales control over the car, Viera conferred on Morales power to consent to a reasonable search of it.[8] Fur-

---

6. The voluntariness of the consent is not at issue in this appeal.

7. If, however, a driver's control is limited, in that he does not have a key or other means of access to the trunk or glove box, the scope of his authority to consent to search of those areas is similarly limited. We make no finding as to a driver's authority to consent to a search of a passenger's luggage or other personal effects.

8. A third party in sole possession and control of a vehicle clearly has the authority to consent to its search. *See, e.g., Diaz–Albertini*, 772 F.2d at 658–59 (driver, hired by owner to drive car from Florida to California, could give valid con-

thermore, Viera's silence during Corporal Durnan's inspection of the car is material in assessing Morales's authority. *See United States v. Varona–Algos*, 819 F.2d 81, 83 (5th Cir.) (passenger who later claimed ownership of car remained silent during search, thereby impliedly consenting to it), *cert. denied,* —— U.S. ——, 108 S.Ct. 296, 98 L.Ed.2d 255 (1987); *Ledda,* slip op. at 8 (owner's failure to countermand driver's consent during search reinforced driver's control and authority over vehicle, as well as impliedly consented to search); *see also United States v. Horton,* 488 F.2d 374, 380 n. 6 (5th Cir.1973) (person possessing keys and holding himself out as owner may be joint user of vehicle and is authorized to consent to search of it, although actual owner who remained silent during search was present), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974). There is nothing on this record to show that Viera had any special privacy interest in the hidden area beyond that which he had in the car itself.[9] Neither Morales nor Viera revoked or limited the scope of the consent in any way. *See Espinosa,* 782 F.2d at 892 (failure of driver and passenger to object during extensive search of vehicle indicated search was within scope of consent).

### IV.

 This case is controlled by Morales's consent to the search of the car. That consent extends to any part of the car with respect to which Morales and Viera had ready access. The fact that certain compartments or their interiors are hidden

from view is in and of itself immaterial. Therefore, the district court's reliance on Viera's having a separate privacy interest in a particular compartment simply because it is hidden from view is misplaced.

In finding that Morales did not have joint access to the "enclosed and hidden" compartment within the rear seat, the district court relied on *United States v. Block,* 590 F.2d 535 (4th Cir.1978). In *Block,* the defendant resided at his mother's home. The North Carolina state police, suspecting that James McGee was dealing drugs and that he was visiting the defendant at the Block residence, "descended" upon the home at 4:45 one morning armed with an arrest warrant for McGee. Mrs. Block consented to a search of her son's room and heroin was found in his footlocker. The Fourth Circuit upheld the search of the room but held the footlocker search invalid as outside the scope of Mrs. Block's authority to consent because she did not have access to the contents of her son's closed, locked footlocker. The court explained:

> While authority to consent to search of a general area must obviously extend to most objects in plain view within the area, it cannot be thought automatically to extend to the interiors of every discrete enclosed space capable of search within the area. The decided cases indicate precisely the contrary: that each such enclosed space stands on its own bottom for this purpose.

*Block,* 590 F.2d at 541 (footnote and citations omitted).

I do not believe *Block* is persuasive in this case, which involves the search of the

---

sent to search of vehicle while stopped at lawful roadblock), *see also* W. LaFave, 3 Search and Seizure § 8.6(a) (1987); 68 Am.Jur.2d § 53 (1973) (where owner gives full control of car to third party, third party may consent to search of vehicle). Evidence found during a valid consensual search may be used against the absent owner. *See Matlock,* 415 U.S. at 170, 94 S.Ct. at 993 ("consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared").

**9.** We note that a passenger may also have the authority to consent to a full search of a vehicle, including the trunk. *United States v. Ospina,*

682 F.Supp. 1182 (D.Utah 1988) (passenger who shared "particular knowledge about the car and its control and dominion" could clearly authorize a search of the interior, during which officer found cocaine within seat belt slot after noticing molding was missing). Married couples can have joint control over an automobile and one spouse may give a valid consent to search, even where the other spouse refuses to do so. *United States v. Baldwin,* 644 F.2d 381, 383 (5th Cir. Unit A 1981) (per curiam) (wife consented to search of vehicle after being informed by FBI that husband, who was arrested while driving vehicle but refused to consent to search, was involved in bank robbery).

interior of a vehicle over which the driver had immediate control and possession. Accordingly, I would not extend it to deny a driver the authority to consent to a search of accessible compartments in an automobile under joint control with the owner. Morales had common and joint access to all areas of the passenger compartment, including the rear seat area. The area in which the cocaine was found was described by the district court as an "enclosed and hidden" compartment. Review of the record reveals the following testimony from Corporal Durnan describing his search of the passenger compartment:

> I could see that the backrest of the seat was pulled slightly away from the rear deck. I pulled it forward and I could see two packages down in the lower portion of the seat taped into the foam back portion. When I pulled the thing forward, the packages fell backwards toward the rear of the car.

*Id.* at 19.[10] It was immediately apparent to Corporal Durnan that some object was precluding the seat from resting flush with the rear deck. The seat was not secured, and Durnan simply pulled it forward and discovered the cocaine. Thus, *Block* is distinguishable.

A driver may consent to a search of all areas of a vehicle to which he has joint access and control. This includes an immediately apparent, readily accessible compartment. *See, e.g., Espinosa*, 782 F.2d at 890 (cocaine found in left rear quarter panel of vehicle during consent search); *Lopez*, 777 F.2d at 546 (after noticing strange ether odor, officers obtained driver's consent to search vehicle, saw screws holding speakers were stripped, retrieved screwdriver from glove box, removed screws and speakers and ultimately discovered cocaine underneath); *Diaz–Albertini*, 772 F.2d at 655 (during consent search, officer noticed heaviness of station wagon's tailgate, saw corner of plastic interior cover was loose,

lifted it and saw metal plate with non-factory screws, unscrewed metal plate and discovered cocaine); *United States v. Ospina*, 682 F.Supp. 1182, 1183 (D.Utah 1988) (during consent search, officer searching interior of vehicle noticed seat belt molding was missing, reached into hole and discovered cocaine). In this case the "enclosed and hidden" area was a readily accessible part of the car itself. It would be incongruous to allow an officer to open a glove compartment or trunk during a consensual full vehicle search but not to allow him to pull a seat backrest forward to search for contraband.

Because Morales's consent to search was valid as to Viera, it is unnecessary to address the district court's finding that Corporal Durnan did not act in good faith in relying on Morales's consent to search the car.

### V.

Since Judge Seitz concurs in the result, we will reverse the district court's order suppressing the evidence as to Viera and remand for further proceedings.

SEITZ, Circuit Judge, concurring.

I join in Judge Hutchinson's conclusion that the consent of the driver Morales to a search of the vehicle constituted, under the circumstances, a valid third party consent thereby allowing the fruits of the search to be used against Viera.[1] I write separately to make clear the straight forward basis upon which I reach this conclusion.

In *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the Supreme Court held that a third party who possesses "common authority over or other sufficient relationship to the premises or effects sought to be inspected" may validly consent to a search of the premises or effects. *Id.* at 171, 94 S.Ct. at 993. The

---

**10.** I have carefully searched the record for other evidence regarding the nature of this "enclosed and hidden" compartment and have failed to find any. The district court apparently based its factual determination that the area was an "enclosed and hidden" compartment on the above

testimony. Reviewing it, I cannot say the district court clearly erred in so finding.

**1.** The district court determined that Morales lacked standing to object to the validity of the search and admitted the evidence against him. Morales is not a party to this appeal.

Court noted that: "The authority which justifies the third-party consent does not rest upon the law of property ... but rather rests on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.* at 171 n. 7, 94 S.Ct. at 993 n. 7 (citations omitted). I think the quoted language has even more compelling application in a motor vehicle context, particularly where the consent is given by the driver. Cf. *New York v. Class,* 475 U.S. 106, 112, 106 S.Ct. 960, 965, 89 L.Ed.2d 81 (1986); *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (plurality opinion).

In this case, Morales was the driver of a vehicle rented to Viera, the passenger. The car was stopped for speeding and the driver was asked to produce his license and registration. Morales thereafter produced his own driver's license and the car rental agreement which Viera obtained from the glove compartment. The trooper did not know Viera's identity. Thereafter, Morales accompanied the trooper to the patrol car. While seated in the front seat Morales was asked if there were any guns, fireworks or untaxed cigarettes in the car. Morales responded, "no, you can look if you want". Officer Durnan then presented Morales with a consent to search form authorizing a "complete search" of the vehicle. Morales signed the consent form.

Officer Durnan returned to the vehicle and asked Viera to step out. Officer Durnan then searched the vehicle and found two packages behind the backrest of the rear seat. These packages were later found to contain cocaine.[2] During the entire process, Viera did not complain nor did he seek to prevent the search based on his rental interest.

I believe that Morales, as the driver, can be said to have access to or control over the entire vehicle, in this case, notwithstanding the fact that the passenger, Viera, had a superior property interest in the vehicle. See *United States v. Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7. Viera, by allowing Morales to drive the vehicle, relinquished his unique sphere of control over all areas of the vehicle over which Morales had ready access, whether such access was exercised or not. Had Viera taken some special step to deny Morales access, such as withholding the key to the trunk from Morales, a different case would be presented over which I express no opinion. In this case, Viera cannot be said to have taken any special step to deny Morales access to part of the vehicle. I must therefore conclude that Morales had access to the entire vehicle. It seems unrealistic to conclude that Morales had access to the trunk, glove box and rear seating area of the vehicle, as Viera admits, while lacking access to the area behind the rear seat, as this would force this court to engage in the type of "metaphysical subtleties" which the Supreme Court has warned against. *Frazier v. Cupp,* 394 U.S. 731, 740, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684 (1969).

I, therefore, reject the notion that Morales did not have access to or control over the "hidden" compartment behind the back seat. See *United States v. Block,* 590 F.2d 535, 541 (4th Cir.1978). Although the notion of discrete and secret compartments within a house, as was the case in *Block,* may have validity in that context, I find that it has no application in the automotive context absent a showing of special circumstances. It has long been recognized, that persons have a "lesser expectation of privacy in a motor vehicle" as contrasted with a house; the decision of this Court is consistent with this principle. See *New York v. Class,* 475 U.S. 106, 112, 106 S.Ct. 960, 965, 89 L.Ed.2d 81 (1986).

It was reasonable to recognize that Morales had the right to permit the inspection of the vehicle and that Viera, by allowing

---

**2.** Viera does not contend that Officer Durnan exceeded the scope of the consent in searching behind the backrest of the vehicle but instead contends that Morales' consent should not be held to permit the search as to Viera.

Morales to drive, assumed the risk that Morales might allow the vehicle to be searched. Under my reading of *Matlock*, therefore, Morales can properly be considered to have given a valid third party consent to the car search.

For all the foregoing reasons, I join with Judge Hutchinson's judgment that the order of the district court, suppressing the evidence as to Viera, be reversed and remanded.

SLOVITER, Circuit Judge, dissenting.

The two opinions which comprise today's judgment reversing the district court's order suppressing the evidence as to Viera greatly extend the law of third party consent to search. Because I believe that our fourth amendment protections should not be further eroded, even when the object is the despicable cocaine trade, I respectfully dissent from the judgment of the court.

It is now well established that the consent which legitimizes a warrantless search can, under certain circumstances, authorize a search that is effective as to a third party. However, in articulating the legal principle that "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared," *United States v. Matlock*, 415 U.S. 164, 170, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974), the Court included two limitations, *i.e.*, there must be both "common authority over premises or effects" and an "absent, nonconsenting person."

The rationale for permitting the consent to search by one person to apply to others "rests ... on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.* at 171 n. 7, 94 S.Ct. at 993 n. 7.

The assumption of this risk is illustrated by the facts in *Matlock*. Mrs. Graff, who gave the arresting officers consent to search the house, including the bedroom where the evidence against Matlock was found, jointly occupied that bedroom with Matlock. Mrs. Graff was not a casual visitor and had lived with Matlock elsewhere before they moved to her parents' house, which is where they were living at the time of the search. *Id.* at 166–68, 94 S.Ct. at 990–92. Thus it was reasonable to conclude that Matlock had relinquished his expectation of privacy and thereby surrendered to her authority to consent to the search. Put in the perspective of the facts before us, she was not merely a friend sharing the ride and driving chores en route to a mutual destination.

My colleagues overlook that "joint access or control" is relevant because a third party consent is premised on the earlier surrender of one's privacy interest in the area sought to be searched. They both assume that by virtue of Viera's relinquishment of the driving duty to Morales, Viera gave Morales access to or control over the entire vehicle. There is no basis for such an assumption.

Both Judges Hutchinson and Seitz appear to accept the general principle of *United States v. Block*, 590 F.2d 535 (4th Cir.1978), which protects one's privacy in hidden or enclosed areas, although both believe it is inapplicable here. In *Block*, the court held that a mother could not consent to the search of her son's footlocker even though it had been left by him in her home. The *Block* court explained that third party consent validly given to search a certain area "cannot be thought automatically to extend to the interiors of every discrete enclosed space capable of search within the area." *Id.* at 541.

This principle was referred to by two Justices in *United States v. Karo*, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984), where Justice O'Connor, joined by then-Justice Rehnquist, stated that "[a] homeowner's consent to a search of the home may not be effective consent to a search of a closed object inside the home. Consent to search a container or a place is effective only when given by one with 'common authority over or other sufficient relationship

*to the premises or effects sought to be inspected.'"* *Id.* at 725, 104 S.Ct. at 3308 (O'Connor, J., concurring in part and concurring in the judgment), quoting *Matlock,* 415 U.S. at 171, 94 S.Ct. at 993 (emphasis added).

The basis of the enclosed compartment doctrine is that the owner has retained a discrete and unrelinquished expectation of privacy. *See Block,* 590 F.2d at 541 n. 8. In this case, the district court made a fact finding that the area behind the back seat of the car rented by Viera where the cocaine was secreted was "enclosed and hidden." *United States v. Morales,* 676 F.Supp. 560, 566 (D.Del.1987). Although Judge Hutchinson's opinion suggests some discomfort with that finding, *see* Hutchinson, J., at 400, I do not understand him to conclude that that finding was clearly erroneous.

Judge Seitz takes a different position, stating that "the notion of discrete and secret compartments within a house, as was the case in *Block* ... has no application in the automotive context absent a showing of special circumstances," Seitz, J., at 402. The rationale for a lesser privacy interest in an automobile, its "little capacity for escaping public scrutiny," *Cardwell v. Lewis,* 417 U.S. 583, 590, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325 (1974) (plurality opinion), is not applicable to enclosed compartments within an automobile. Judge Seitz believes, however, that because Viera took no "special step to deny Morales access to part of the vehicle," Seitz, J., at 402, Viera relinquished total control to Morales. That reasoning would apply equally to items secreted behind or under a secret trap door in a house. I do not understand the enclosed area doctrine to be limited to the technicality of a lock and key, however fragile, which would indeed put us into the "metaphysical subtleties" Judge Seitz decries.

In effect, both of my colleagues reach the conclusion that as a matter of law Morales had the right to give a valid third party consent from the fact that Viera permitted Morales to drive. Had Viera been absent, I would agree that relinquishment of possession to another would evidence the type of abandonment of one's privacy interest that authorizes the driver to consent to search the entire automobile, including the trunk and the hidden area behind the back seat. One who surrenders possession of a car must assume that the driver may need to have access to the trunk in the event of a flat tire, under the hood in the event of engine trouble, or to the glove compartment, the area under the seats, and other parts of the vehicle in the event of unforeseen complications.

Here, however, Viera did not absent himself, and my colleagues inexplicably ignore the significance of that second *Matlock* factor. In *Matlock,* the Supreme Court specifically noted that the case involved admitting the fruits of the search "against the *absent,* nonconsenting person," *Matlock,* 415 U.S. at 170, 94 S.Ct. at 993 (emphasis added). When the owner or lessee of the vehicle remains in the vehicle while the companion drives, it is unrealistic to assume that the driver has been given the same access to or control over all parts of the vehicle that s/he would have when the owner/lessee is absent. If Morales had a flat tire or needed a flashlight, Viera was there to search the trunk or glove compartment for the needed item and could have restrained Morales from looking further than Viera intended. *Cf. United States v. Anderson,* 859 F.2d 1171 (3d Cir.1988) (driver's consent to search trunk valid as to passenger with no possessory interest).

The authority of a third party to consent to the search must be inferred from the circumstances, and has not, until now, been assumed as a matter of law. Indeed, the consent as a matter of law on which my colleagues' opinions are premised is inconsistent with the Supreme Court's holdings that the government bears the burden of proving valid consent, *Matlock,* 415 U.S. at 177–78 n. 14, 94 S.Ct. at 996 n. 14; *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). No such proof was offered in this case.

Both of my colleagues suggest Viera's "silence" during the search reinforces their positions. Judge Seitz states that "Viera

did not complain nor did he seek to prevent the search based on his rental interest," Seitz, J., at 402, thereby suggesting that Viera should be viewed as consenting to the search itself. Even if Viera were silent, that can hardly be equated with consent. In the circumstances of this case, it is difficult to conclude that Viera waived his Fourth Amendment rights when he was not told what they were. In any event, that would more appropriately be an issue on which the district court should make a fact finding.

Judge Hutchinson, on the other hand, states that Viera's silence "is material in assessing Morales' authority," Hutchinson, J., at 402, apparently looking to the scope of Morales' authority to consent. However, Morales gave oral and written consent to Corporal Durnan's search when he was in the front seat of the corporal's patrol car while Viera was outside. In fact, there is no evidence that Viera was made aware that Morales had consented and that the search was being conducted because of the consent of Morales rather than on the initiative of the searching officer. Therefore, I see no basis to assume that Viera's silence was an implied grant of authority to Morales to consent to the search. As I view the record and the district court's findings, the government has not borne its burden of demonstrating valid consent from Viera's presumed silence. For that reason, the cases cited in Judge Hutchinson's opinion where intrusive automobile searches were upheld against the consenting party, *United States v. Espinosa*, 782 F.2d 888 (10th Cir.1986); *United States v. Lopez*, 777 F.2d 543 (10th Cir. 1985); *United States v. Diaz–Albertini*, 772 F.2d 654 (10th Cir.1985), *cert. denied*, — U.S. ——, 108 S.Ct. 82, 98 L.Ed.2d 45 (1987), are inapplicable.

Because I conclude that there was no showing that Morales had actual authority to consent to the search, I must reach the government's argument that he had apparent authority to give that consent. Assuming *arguendo* that the government may benefit from a police officer's belief, although mistaken, in a third party's apparent authority to consent, the government's reliance on that authority must be reasonable. *See Riley v. Gray*, 674 F.2d 522, 528–29 (6th Cir.), *cert. denied*, 459 U.S. 948, 103 S.Ct. 266, 74 L.Ed.2d 207 (1982). The district court found that Corporal Durnan "did not have a reasonable good faith belief in the validity of Morales' consent" because Corporal Durnan had notice that a Mr. Viera, not the driver, was the lessee of the car. *Morales*, 676 F.Supp. at 567. Corporal Durnan had a conversation with and questioned the passenger (Viera) as to his travel plans but did not ask him to identify himself before the search. Under these circumstances, I believe we could not hold clearly erroneous the district court's findings that Corporal Durnan could have discovered that the car's lessee was present without danger to himself or the investigation and that Corporal Durnan did not have a reasonable good faith belief in Morales' authority to consent.

Accordingly, I would affirm the district court's order suppressing the evidence as to Viera.