**UNITED STATES of America,**

v.

**Marcus Anthony WILMINGTON, Defendant.**

**No. 3:01–CR–151.**

United States District Court, M.D. Pennsylvania.

Aug. 28, 2002.

Robert M. Rosenblum, Rosenblum & Anders, Stroudsburg, PA, Patrick A. Casey, Federal Public Defender's Office, Scranton, PA, Marcus Anthony Wilmington, Lorain, OH, for defendant.

George J. Rocktashel, U.S. Attorney's Office, Williamsport, PA, for U.S.

## MEMORANDUM

MUNLEY, District Judge.

Before the court for disposition is the motion to suppress filed by defendant, Marcus Anthony Wilmington. This Court held a suppression hearing on June 24—25, 2002. The parties have briefed their respective positions, and the matter is ripe for decision. For the reasons that follow, the motion to suppress will be denied.

### Background

The facts underlying the instant criminal case are as follows: Kirk Schwartz, a detective with the Monroe County District Attorney's Office, and Ronald Paret, an agent with the Pennsylvania Office of the Attorney General, Bureau of Narcotics, boarded and searched a Greyhound Bus stopped at the Delaware Water Gap Toll Plaza. The defendant, Marcus Anthony Wilmington, was a passenger on the bus. The authorities allegedly searched a bag on the bus and found three kilograms of cocaine. No one on the bus, including the

defendant, claimed the bag in which the cocaine was found. The defendant claimed to have one bag, and he allowed the officials to search it. The officials connected the bag containing the cocaine to Wilmington based upon the contents of the bag that Wilmington claimed and allowed them to search. The officials arrested the defendant. He is charged with distribution of a controlled substance, specifically in excess of 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). The defendant is free on bail pending trial. He has filed the instant suppression motion. Where appropriate, the facts will be addressed with more particularity below.

Defendant claims that both the original stopping of the bus and the search and seizure of the defendant himself are unconstitutional because valid consent was not provided. Defendant also argues that the search and seizure of the bus is an unconstitutional state action violating the federal government's power to regulate interstate commerce. Lastly, the defendant avers that the actions of the authorities in the instant case amount to an unconstitutional drug interdiction road block under *City of Indianapolis v. Edmond,* 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). We find no merit to any of the defendant's arguments, but shall address them *seriatim.*

## Discussion

The Fourth Amendment of the United States Constitution specifically guarantees "(t)he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures ...." Governmental searches conducted pursuant to a validly obtained warrant or reasonably incident to a valid arrest do not violate this guarantee. In the instant case, however, no search warrant was obtained. The government contends that the search and seizure are not unreasonable because consent was provided.

It is well settled that the government may undertake a search without a warrant or probable cause if an individual freely and voluntarily consents to the search. *Kerns v. Chalfont–New Britain Twp. Joint Sewage Authority,* 263 F.3d 61, 65 (3d Cir.2001). Any evidence discovered during a validly consented to search may be seized and admitted at trial. *United States v. Kim,* 27 F.3d 947, 955 (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).

The question for us, therefore, is whether consent to search in the instant case was given freely and voluntarily. The Third Circuit Court of Appeals has explained voluntary consent as follows:

As the Supreme Court instructed, "[w]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Schneckloth,* 412 U.S. at 222, 93 S.Ct. at 2045 (internal quotation marks and citations omitted). "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Id.* at 227, 93 S.Ct. at 2047–48. Thus whether consent was given is to be resolved by examining all relevant factors, without giving dispositive effect to any single criterion. Certain factors that courts consider in determining whether confessions were voluntary, such as the age of the accused, his education, his intelligence, whether he was advised of his constitutional rights, and whether the questioning was repeated and prolonged, *id.* at 226, 93 S.Ct. at 2047, are relevant to our examination. *See United States v. Velasquez,* 885 F.2d 1076,

1081–83 (3d Cir.1989), cert. denied, 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 497 (1990). *Id.*

### A) Bus Search

■ The first matter addressed by the defendant is whether the bus driver provided valid consent for a search of the bus. The law provides that the driver of a vehicle has authority to provide consent for search of that vehicle. *United States v. Morales,* 861 F.2d 396, 399 (3d Cir.1988). In the instant case, the bus driver testified that he voluntarily pulled to the side of the road. Notes of Testimony of Suppression Hearing (hereinafter "N.T.") 6/24/02 at 9. Nonetheless, the defendant claims that a reasonable person in the driver's position would have concluded that he was not at liberty to ignore the police presence and go about his business, and therefore, the consent was not freely and voluntarily provided.

■ Defendant indicates that several factors demonstrate that the search violated the Fourth Amendment. The first factor that the defendant finds relevant is the location of the stop. He argues that the encounter took place in a restricted area that gave law enforcement a significant advantage in controlling the travel of the bus. According to the defendant, the location of the encounter itself is sufficient to find an illegal seizure.

A description of the initial encounter with the bus follows: The Greyhound Bus came to the Delaware River Toll Plaza on its way from New York City to Chicago, Illinois. N.T. 6/24/02 at 20. As the driver stopped to pay the toll, Kirk Schwartz, a detective with the Monroe County District Attorney's Office, approached the bus on foot and addressed the driver through the bus's open window. Schwartz asked the driver "if he would mind speaking with us, if he had the time when he was done

paying the fare, when he was complete with his transaction." N.T. 6/25/02 at 30–33. Schwartz was in plainclothes, with a police identification windbreaker jacket. He was armed, with a concealed weapon in a bag around his waist. *Id.* at 34. The bus driver responded by pulling the bus over to the far right side of the toll plaza area and parking. *Id.*

The area where the bus ultimately parked is not a recreational area or a place to leave automobiles. N.T. 6/24/02 at 50. The area has several public pay phones, and motorists can fix flat tires, ask questions or get directions from toll plaza employees. Loitering in the area is not permitted. *Id.*

The toll booth area is restricted to motor vehicle traffic, toll commission employees and law enforcement personnel. *Id.* at 49. Access roads leading to the area are blocked to the public and open only to emergency and law enforcement personnel. *Id.* at ˙51. The Delaware River Bridge Commission had previously provided Ronald Paret, an agent of the Pennsylvania Office of the Attorney General, Bureau of Narcotics, with permission to contact buses at the toll plaza and ask for permission to search them. N.T. 6/25/02 at 30.

We find that the defendant's first argument, that the location of the encounter itself is sufficient to find an illegal seizure, to be without merit. The defendant has noted nothing about the area itself that would make a driver of a bus feel compelled to comply with the law enforcement officers' request. Moreover, nothing is present in the area that would make the police request more coercive than a request made elsewhere.

■ Next, defendant argues that asking the bus driver to pull over for an unscheduled stop and alter his course of travel is another factor we should consider in deter-

mining whether the bus voluntarily stopped. Without citing any authority for the proposition, the defendant claims that this action alone is sufficient to find that an illegal search and seizure occurred. We disagree. As noted above, the police approached the bus while it was stopped to pay the toll. The police officer did not order the bus to pull over when the toll was paid, but asked if it would. The facts reveal nothing coercive about Schwartz's or Paret's actions.

Defendant proceeds to argue that obedience to a "uniformed police officer" is mandatory under Pennsylvania law, and that, coupled with Detective Schwartz's oral request for the bus to pull over, could constitute an order of a uniformed police officer. We are unconvinced. The police did not *order* the bus to pull over, a request was made for the bus to pull over if it had time. The request was made while the bus was stopped to pay the toll. Accordingly, this argument is rejected.

■ The next factor that the defendant discusses is that the "driver yielded to police authority." Basically, the defendant complains that the driver had past dealings with Agent Paret who had asked the driver to pull over in the future if he saw him. N.T. 6/24/02 at 29. In addition, Greyhound Buslines had a policy to comply with such request. The driver could, however, refuse if he was not on schedule. *Id.* at 9—10. We find that these two factors do not indicate that the bus was illegally seized.

The defendant also finds it relevant that the bus was not parked when Detective Schwartz approached it. The bus may not have been "parked" when Schwartz approached it, however, it was stopped to pay the toll. There is no indication that coercion or duress from the police caused the bus to stop and pay the toll. Therefore, we find no merit to the defendant's argument.

■ Lastly, with respect to the bus, defendant claims that the police had no reason to stop the bus as nothing appeared in "plain view" to raise the suspicion of the authorities. We find this argument to be unpersuasive. The Supreme Court has held that the Fourth Amendment permits police officers to approach bus passengers at random to ask questions and to request their consent to searches, provided that a reasonable person would understand that he or she is free to refuse. *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Moreover, the government is not claiming that any kind of suspicion led to the targeting of the bus, it was merely a random, voluntary search.

### B) Seizure of Wilmington on the bus

■ The defendant claims that his seizure on the bus was unconstitutional because, unlike other cases, he did not have the option of disembarking from the bus and traveling by foot to his destination. Accordingly, he argues that the seizure was involuntary and the evidence should be suppressed. We are unconvinced.

To analyze whether he was unconstitutionally seized, the defendant focuses on whether he felt free to leave the bus. This is not the proper emphasis. As the United States Supreme Court has held, "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Florida v. Bostick*, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (internal quotation omitted). Where the encounter takes place, however, is one factor to consider, but it is not necessarily the determinative factor. In *Bostick*, the Court also stated that "[W]hen the person is seated on a bus and has no desire to

leave, the degree to which a reasonable person would feel free to leave is not an accurate measure of the coercive effect of the encounter." *Id.* at 435–36, 111 S.Ct. 2382. "[T]he mere fact that Bostick did not feel free to leave the bus does not mean that the police seized him. Bostick was a passenger on a bus that was scheduled to depart. He would not have felt free to leave the bus even if the police had not been present. Bostick's movements were 'confined' in a sense, but this was the natural result of his decision to take the bus; it says nothing about whether the police conduct at issue was coercive." *Id.* at 436, 111 S.Ct. 2382.

Accordingly, we reject the defendant's argument that he did not feel free to leave the encounter and go about his business. His presence on the bus was due to his own actions not the conduct of the authorities. A review of the law enforcement officials' actions in the instant case, reveals a constitutional search and seizure occurred.

■ Paret and Schwartz boarded the bus. Schwartz proceeded to the back of the bus to check the bathroom for contraband. Paret addressed the passengers on the public address system. He identified himself and stated that he and Schwartz were on the bus to do a brief drug investigation. N.T. 6/24/02 at 65–66. He then went to the back of the bus and began speaking with the passengers in a systematic manner. The officials made no effort to block any passenger's movements. *Id.* at 66. Paret asked the defendant if he could see his bus ticket and whether he had any carry-on luggage. *Id.* at 68. The defendant produced his ticket and identified a plastic bag by his feet as the only bag he had. *Id.* Paret observed that the defendant was trembling when he handed him the ticket and that his name was listed as "Smith" on the ticket. Paret asked him if he had any identification, and the defen-

dant answered that he did not. *Id.* at 69. Paret asked if he had any other baggage and the defendant indicated that he did not. *Id.* at 69–70. He then asked for permission to search the bag. The defendant said, "Go ahead," and handed the bag to Paret. *Id.* at 70. Paret used a general conversational tone of voice when speaking with the defendant, and Schwartz did not participate in the discussion with the defendant. *Id.* Paret did not restrain or have any physical contact with the defendant. *Id.* at 71. The officials made no effort to prevent the defendant's movement. *Id.*

Based on the totality of the circumstances, therefore, we find that the consent to search provided by the defendant was freely and voluntarily given. There is simply no evidence of duress or coercion on the part of the investigators. The officials applied no force, they did not brandish weapons, block exits, threaten, command or use an authoritative tone of voice. *See United States v. Drayton*, 536 U.S. 194, 122 S.Ct. 2105, 2112, 153 L.Ed.2d 242 (2002) (utilizing these factors to determine that there was nothing coercive or confrontational in a bus drug interdiction encounter).

## C) Interstate Commerce

■ In another argument, the defendant contends that the conduct of the Pennsylvania Attorney General's Office is a direct challenge to the federal government's authority to regulate interstate commerce. Defendant has cited no authority to support his position, and we reject it. To extend the defendant's argument to its logical conclusion, state police agencies would have no authority to stop or challenge any trucks or buses engaged in interstate commerce.

**D) *Edmond* case**

 In the conclusion to his brief in support of suppression, the defendant claims that the Pennsylvania Attorney General's Office has enacted a *de facto* narcotics checkpoint and that such checkpoints are unconstitutional under *City of Indianapolis v. Edmond,* 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). We find that the instant case is distinguishable from the *Edmond* case.

*Edmond* dealt with a police checkpoint, a roadblock where the police stopped a predetermined number of vehicles. *Edmond,* 531 U.S. at 34, 121 S.Ct. 447. A police officer approached the car, told the driver that he is being stopped at a drug checkpoint and asked for his driver's license and registration card. The police officer would examine the driver for signs of impairment and conduct an open-view examination of the vehicle from outside while a narcotics detection dog walked around the outside of the vehicle. *Id.* at 35, 121 S.Ct. 447. In the instant case, the bus was already stopped when the police officer approached it. N.T. 6/25/02 at 32. Before talking to the driver, Detective Schwartz did not block its path in any fashion. *Id.* at 33, 121 S.Ct. 447. Schwartz did not tell the driver to stop, but requested that he do so if he had the time. *Id.* at 33–34, 121 S.Ct. 447. It was a voluntary search and seizure, not a roadblock. Accordingly, *Edmond* is not dispositive of the issue with which we are presented.

**Conclusion**

After a review of the search and seizure in the instant case, we find no constitutional violation. The driver of the bus voluntarily and freely consented to a search of the bus, and the defendant likewise voluntarily and freely consented. The totality of the circumstances reveal that the investigators did not utilize duress or coercion in order to gain compliance with their requests. Accordingly, the motion to suppress will be denied. An appropriate order follows.